WILLIAM H. LEGGETT, trustee under the last will and testament of Gerardus Post deceased, of Susan Post Leggett and her descendants, *vs.* WILLIAM HUNTER, jun., DANIEL McCABE and NATHANIEL S. BAILEY.

WILLIAM H. LEGGETT, trustee &c. of Mary Jagger Barber, and her descendants, *vs.* THE SAME DEFENDANTS.

25b 81
45ap308

A testator, by his will, made in 1833, gave two-fifths of his real estate to his two daughters, so that each might have and enjoy the interest or income of one-fifth during life, and at their death, respectively, the share of each was to go to her issue. He appointed executors, and constituted them " trustees to the estate," and authorized and desired them, as such, to take charge of the real estate, to manage and improve the same, and to pay over to the said daughters, from time to time, the rents, interest or net income thereof. In case the daughters should marry, he declared that payment to them, on their receipt, without the signature or consent of their husbands, should be sufficient. In case of any sale of his real estate, the testator directed his executors to put out and invest the daughters' shares of the proceeds either on bond and mortgage, or in the purchase of other real estate. And he authorized them, in the execution of their trust, at any time, if they thought best, to sell the real estate, with the allowance of the court of chancery first had and obtained for that purpose. *Held* that these powers were conferred, and the implied estate devolved, upon the donees not as executors, but as ordinary trustees, such as are designated in the statutes relative to uses and trusts; the allusion to them as executors being merely a convenient way of designating the persons, and not designed to mark the capacity in which they were to take.

And the surviving executor and trustee having resigned his trust, and L. having been substituted in his place, by the court; and the legislature having passed an act authorizing a sale of the lands devised to the daughters, on leave for that purpose being obtained from the supreme court; and providing that on such sales being reported to the court, and confirmed, conveyances should be executed to the purchaser or purchasers; and that such conveyances, if executed by the said L. as substituted trustee, should be valid and effectual to vest in the purchaser or purchasers, a fee simple absolute, as against all persons having any claim to, or interest in, the premises under the will, and all descendants of the daughters, whether in being or not, who might become interested therein under said will; and a sale of the real estate devised to the daughters having been made by L. as such trustee, in conjunction with S., the special guardian of the infants, in pursuance of an order granted by the court, on an application made under the said statute, and a portion thereof having been bid off by the defendants; and the sale having been confirmed by the court, and conveyances ordered to be executed to the purchasers, by L. as such trustee, by S. as special guardian, and by the daughters and their hus-

bands, and such conveyances having been executed, and tendered to the defendants; it was *Held* that under such conveyances the purchasers would acquire a valid title to the premises purchased by them, respectively; and that the defendants were bound to accept the conveyances and complete their purchases.

Although a court of equity cannot substitute new executors, as such, for those named by the testator, yet when the duties of executors, as such, have terminated, and they have become simply trustees, the power conferred by the revised statutes upon courts of equity, to compel the resignation of a trustee, and to appoint another in his place, (1 *R. S.* 730, §§ 69, 71,) is applicable, and may be exercised.

The statute uses the words "any trustee," and the term is broad enough to include all who are intrusted with the management of real estate in that capacity.

CONTROVERSY submitted to the court, by the parties, without action, pursuant to the provisions of the code. Gerardus Post, late of the city of New York, died October 22, 1833, leaving him surviving his only children and heirs at law, Gerardus Post, William Post, Jehiel J. Post, Susan Post, and Mary Jaggar Post. Susan, on the 25th of November, 1841, intermarried with Edward W. Leggett, and has issue of such marriage; and Mary J., on the 3d of November, 1847, intermarried with William T. Barber and has issue. The decedent left a last will and testament, dated October 12, 1833, and admitted to probate as a will of real and personal estate, on the 18th of November, 1833. By the third clause of said will the testator gave and devised to each of his three sons, as they should severally arrive at the age of twenty-five years, the one equal fifth part of all the rest and residue of his estate, and to his two daughters, Susan and Mary J., the remaining two-fifths of his estate, so that each might have and enjoy the interest or income of the one equal fifth part thereof, during their several natural lives; and at their death, respectively, he willed the share of each to their respective lawful issue, their heirs and assigns forever. The will also contained the following provisions:

" *Item.* I hereby appoint my executors, hereinafter named, trustees to the estate of my two daughters, hereby authorizing and desiring my executors as such trustees, to take charge of all such portion of my estate as is herein given to them respectively, and to take care of, manage and improve the same to the

best advantage, and to pay over to them respectively, from time to time, the rents, interest or net income thereof. And in case of the marriage of both, or either of them, it shall be sufficient in making such payments, from time to time, to take the receipt of my said daughters respectively, without the signature or consent of their respective husbands, and in the same manner and with like effect as if they were sole and unmarried. And in case of any sale or sales of my real estate, or any part thereof, I direct my executors to put out and invest their share respectively of the proceeds, and to secure the same by a bond and mortgage on such real estate as they shall judge ample and sufficient for its permanent safety and security ; or they may, in the exercise of their discretion, and in the execution of the trust aforesaid, invest the said proceeds, or some part thereof, in the purchase of real estate for the use and benefit of my said daughters, or either of them. And afterwards, in the execution of the trust aforesaid, may, at any time, if they think best, sell the same or any real estate so purchased, with the allowance of the court of chancery first had and obtained for that purpose.

*Item.* I hereby authorize and fully empower my executors to sell and dispose of all and any part of my estate, both real and personal, either at public or private sale, and at such times and in such manner, and for such sum or sums as to them, in the exercise of their best judgment, may seem most expedient, excepting only my wearing apparel and household furniture hereinbefore mentioned."

The testator appointed Jehiel Jaggar, Caleb S. Woodhull and Edward Taylor, executors of his will and guardians of his children during their minority respectively, thereby fully authorizing, and earnestly entreating and desiring them to execute and fulfill the same in all things, according to the true intent and meaning thereof.

On December 23d, 1833, letters testamentary were issued by the surrogate of New York to Caleb S. Woodhull, who acted as sole executor and trustee under said will until the time hereinafter set forth ; the other persons named in said will having in due form of law renounced their appointment as executors, and

declined to act as such, and they are since deceased. Said Ge-
rardus Post died seised and possessed, as tenant in common with
his brother, William Post, of an estate in fee simple in and to
a large real estate, situated in the city and county of New York
and in the county of Kings. The real estate situated in New
York was partitioned and set apart among the children of said
Gerardus Post by the supreme court, in an action brought
therein for that purpose, in the year 1839. The real estate
owned by the said Gerardus Post in the county of Kings, at the
time of his decease, consisted of an undivided moiety of a farm
of land situated in the city of Brooklyn, and known as the " Post
farm." The said Caleb S. Woodhull, as executor of said Gerar-
dus Post, by deed dated March 1st, 1837, and executed by him
as executor as aforesaid, sold and conveyed the undivided moiety
of said farm to one Robert F. Manly, in consideration of $150,000.
Manly executed and delivered to said Woodhull, as executor, a
bond conditioned to pay the sum of $150,000, being the full
consideration for said purchase, and for the purpose of securing
the same, executed to said Woodhull, as executor, a mortgage
upon the premises conveyed by said Woodhull. The bond of
Manly not being paid when it became due, Woodhull, as execu-
tor, on March 28th, 1844, filed a bill against said Manly and
others in the late court of chancery, before the vice chancellor
of the first circuit, for the foreclosure of said mortgage, and on
May 28th, 1844, a decree of foreclosure and sale was made and
entered, in pursuance of which the mortgaged premises, with
the exception of certain portions thereof which had been released
from said mortgage, were sold by P. T. Ruggles, master in chan-
cery, and the same were purchased by said Woodhull, as executor
as aforesaid. The master's deed from Ruggles to Woodhull is
dated October 16th, 1844. Woodhull, as such executor, after-
wards, by deed dated July 27th, 1847, conveyed the one undi-
vided tenth part of the said premises conveyed to him by P. T.
Ruggles, to William Post, who was a son of the said Gerardus
Post, deceased; the said one-tenth part being the share of said
William Post under the will of his said father, Gerardus, and the
said William then having arrived at the age of twenty-five years,

as required by said will. On July 31st, 1847, the said William Post commenced an action in the supreme court in equity against the other children and heirs at law of the said Gerardus Post, and the children and heirs at law of William Post the elder, for the partition of the entire farm, excepting the portions released and conveyed as aforesaid ; and a decree for the actual partition of said premises by commissioners appointed for that purpose was made and entered in said action on July 6th, 1848. The commissioners caused the said premises to be surveyed, and a map thereof to be made and certified by them, on July 17th, 1848, and filed the same in the register's office of Kings county ; and in pursuance of said decretal order, made partition of the premises among the parties interested, and the report of said commissioners was, by a decretal order, made and entered in said action on July 17th, 1848, in all things confirmed. It appears that, in and by the report of the commissioners, and by the decretal order above mentioned, and by a decretal order entered in said action on September 3d, 1851, there was allotted and set apart unto the said Susan, wife of Edward W. Leggett, and to her children, Edward W. Leggett, jun., Catherine Maria Leggett, Frederic Augustus Leggett, Julia Briant Leggett, and George Leggett, as their part and share of said premises, the lots, pieces and parcels of land therein described and designated by certain numbers ; " to have and to hold unto them and to such child or children of the said Susan P. Leggett as might thereafter be born, such estate therein as they then had, or might be entitled to, under the will of the said Gerardus Post, and subject to the estate and interest therein of William H. Leggett, trustee under said will," who had been substituted as such trustee as hereafter stated. There was also by said report and decretal orders above mentioned, allotted and set apart to the said Mary Jaggar, wife of William T. Barber, and her children William T. Barber, jun. and Josephine King Barber, as their part and share of said premises, certain other lots, pieces or parcels of land, known and designated by certain numbers, " to have and to hold the same unto them, and to such child or children of the said Mary Jaggar Barber, as might thereafter be

born, such estate therein as they then had or might be entitled to under the said will of Gerardus Post, and subject to the trusts created thereby, and to the estate and interest therein of William H. Leggett, trustee under said will," who had been substituted as such trustee, as hereafter stated. During the pendency of said partition suit, an action was commenced in the supreme court by said Caleb S. Woodhull, plaintiff, against said Susan P. Leggett, and her husband Edward W. Leggett, and the said Mary Jaggar Barber, and her husband William T. Barber, together with all the children of said Susan Post Leggett, and Mary J. Barber, defendants, in which a judgment order was made and entered on March 30th, 1850, substituting William H. Leggett as trustee, under the will of said Gerardus Post, in the place and stead of said Caleb S. Woodhull. William H. Leggett accepted the trust, and since his substitution has acted as such trustee; and in pursuance of said judgment the said Caleb S. Woodhull, on April 30th, 1850, executed an instrument under seal, transferring all the trust property to said William H. Leggett.

On the 16th day of December, 1851, the said Caleb S. Woodhull rendered his accounts as executor of said Gerardus Post, to the surrogate of the city and county of New York, and his accounts, as such executor, were settled, and his executorship closed by decree of the surrogate.

On June 21, 1853, the legislature of the state of New York passed an act entitled "An act relative to lands held in trust by William H. Leggett for the benefit of Susan Post Leggett, wife of Edward W. Leggett, and her descendants;" which act directed that on the petition of Edward W. Leggett and Susan Post Leggett his wife, and her descendants, in being, in person, if of age, and by next friend, if infants, the supreme court, at a general or special term, held in the county of Kings, might authorize the sale in fee simple absolute of the lands and real estate lying and being in the city of Brooklyn, which, by a decree of the supreme court in partition, made on or about the 3d day of September, in the year 1851, were set apart unto Susan Post Leggett, or of any part or parcel thereof, from

Leggett *v.* Hunter.

time to time, as might be adjudged to be expedient, and calculated to promote the interests of the descendants of said Susan Post Leggett, whether yet in being or not, to whom or for whose benefit the trusts might enure after the death of said Susan, by the provisions of said will. It was also declared that the court should, in respect to such sale or sales, authorize and direct the same to be by auction, on such terms as the court might prescribe, or should ascertain by the report of a referee or otherwise, upon what terms the premises could be sold at any private sale, and might direct the premises to be so sold. Such sale was to be reported to the court, and on confirmation thereof, the court should direct a conveyance or conveyances of the same to be executed accordingly by the said Edward W. Leggett and Susan P. his wife, and by the guardian or guardians acting in behalf of the descendants of said Susan, in the premises. The proceeds of such sale or sales might, under the direction of the court, be applied by the said trustee to the payment of any debts incurred by him as such trustee for the benefit of the aforesaid trust property, and in fulfilling the trusts declared or created in and by said will, and to the payment of all incumbrances, taxes and assessments due or to become due on said trust property ; or the same might be invested in bonds and mortgages, or in repairing and improving the other real estate of the said Susan Post Leggett, and her descendants, also derived by and under said will for the benefit of such persons as might become interested therein under the provisions of said will. And it was declared and provided that all such conveyances made as aforesaid, in pursuance of such authority and direction, if executed by the said William H. Leggett, trustee as aforesaid, or such person as might hereafter be appointed in his place, should be valid and effectual, to vest in the purchaser or purchasers, his, her or their heirs and assigns, a fee simple absolute, as against all persons having any claim to, or interest in, the premises, under the will of said Gerardus Post, deceased, and all descendants of said Susan Post Leggett, whether in being or not, who might become interested therein, under said will.

At the same time, an act precisely similar to the above in all respects, except that it applied especially to the lands held in trust by William H. Leggett, under the will of said Gerardus Post, for the benefit of said Mary Jaggar Barber, wife of William T. Barber, and her descendants, was passed by the legislature. (See Sess. Laws of 1853, p. 846.)

On May 3d, 1854, on the application of Edward W. Leggett to the supreme court, at a special term, held at Brooklyn, setting forth that in pursuance of the provisions of the above act, he, with the said Susan Post Leggett his wife, were about to present their petition to said court for an order directing the sale of the real estate referred to in said act; that the only descendants then in being of said Susan Post Leggett, were Edward W. Leggett, jun., Catherine M. Leggett, Frederick A. Leggett, Julia B. Leggett, George F. Leggett and Allen Leggett, all of whom were infants under the age of fourteen years, and praying for the appointment of Wessell S. Smith, esq., counsellor at law, of the city of New York, as the next friend of said infants, for the purpose of making, on their behalf, an application for the sale of said premises, the court made and entered an order appointing said Wessell S. Smith such next friend. A similar application and order were made at the same time, by the same court, on the petition of William T. Barber, whereby said Wessell S. Smith was appointed the next friend of Josephine King Barber, Bethuel Barber and Buckley Phelps Barber, infants under fourteen years of age, and the only descendants then in being of Mary J. Barber, to make similar application in their behalf. On June 20th, 1854, at a special term of the supreme court, held at Brooklyn, a petition was presented to said court, signed and verified by said Edward W. Leggett and Susan Post Leggett his wife, William H. Leggett, trustee as aforesaid, and by Wessell S. Smith, the next friend of the above named descendants in being of said Susan Post Leggett; which petition set forth all the foregoing facts, stated the present condition and value of the property and the character of the buildings thereon, the amount of taxes and assessments imposed thereon, and the unproductiveness thereof, and other rea-

Leggett *v.* Hunter.

sons for a sale; and concluded thus : " Your petitioner, William H. Leggett, trustee as aforesaid, joins in this application, and prays that the court may direct and authorize him, so far as the power may, by the will of said Gerardus Post, deceased, be vested in him as such trustee, to join in any sale and disposal of the said real estate, which may be made under and in pursuance of this petition, and the subsequent proceedings thereon had, and as such trustee as aforesaid to join in any conveyance of said real estate which may be ordered by the court to be made, and to convey to the purchaser or purchasers thereof such right, title and interest therein and thereto, as he may by virtue of said will of said Gerardus Post, and in his character as trustee thereunder, possess or be able to convey, and hereby expresses his desire and willingness so to do. Your petitioners therefore pray that this court will order and direct that the said real estate, situate in the said county of Kings, and hereinbefore particularly described, and so belonging to the said Susan Post Leggett and her descendants, may be sold under the direction of this honorable court, on such terms and in such manner as to the court may seem proper, in pursuance of the aforesaid act of the legislature, and that the necessary and proper conveyances be executed by the said Edward W. Leggett and Susan Post Leggett his wife, and by such person or persons as may by the court be appointed the guardian or guardians of the infant children of said Edward W. Leggett and Susan Post Leggett his wife; and that the said William H. Leggett, as trustee as aforesaid, may likewise join in such conveyances, and thereby convey all the right, title and interest therein, which he may, under and in pursuance of said will, possess and be able to convey; and that Wessell S. Smith, esq., of the county of Queens, counsellor at law, and who is in no way related to said infants, may be appointed the special guardian of said infants, in relation to the proceedings on this application, and under and in pursuance of the provisions of the aforesaid act of the legislature, and for the purpose of selling and conveying the interests of said infants in said real estate, and William H. Leggett, of Westchester county, and William Post,

of the city of New York, are proposed as sureties for the said Wessell S. Smith, as such special guardian, to join with him in a bond or bonds, in such penalty, and upon such conditions, as shall be required; and that the proceeds of this sale may be paid to and received by the said William H. Leggett, as trustee as aforesaid, and by him held as such trustee, and applied and appropriated to and for the purposes" mentioned in the said petition.

Upon this petition, an order was duly made and entered on June 20th, 1854, referring the matter to John E. Burrill, jun., "to ascertain the truth of the facts stated in the said petition, and whether a sale of the premises therein referred to, of which a sale is asked, or of any and what part thereof, would be beneficial to the said infant petitioners, and the particular reasons therefor, and whether a sale of said premises, or of any and what part thereof, is expedient and calculated to promote the interest of the descendants of the said Susan Post Leggett, whether yet in being or not, and the particular reasons therefor; and to ascertain the value of the property to be sold, and of each separate lot or parcel thereof, and the terms and conditions upon which it shall be sold; and whether the infants are, or either and which of them is, in absolute need of any and what part of the proceeds of the sale, for their, his or her support and maintenance, over and above the income thereof, and his or her other property, together with what he or she might earn by his or her own exertions."

By the same order, Wessell S. Smith was appointed the special guardian of the said Edward W. Leggett, jun., Catherine Maria Leggett, Frederick A. Leggett, Julia B. Leggett, George F. Leggett and Allen Leggett, the infants aforesaid, in relation to the proceedings on said application.

At the same term of the supreme court, a similar petition, signed and verified by said William T. Barber and Mary Jaggar Barber, his wife and by Wm. H. Leggett, trustee as aforesaid, and by Wessell S. Smith, the next friend of the aforesaid infants, the descendants in being of said Mary Jaggar Barber, and setting forth materially the same facts in relation to the

Leggett v. Hunter.

property held by Mrs. Barber and her descendants, as appears in the petition in the Leggett matter, and praying for the same relief, was presented to said court, and an order of reference and for the appointment of said Wessell S. Smith as special guardian for the infant descendants in being of said Mary Jaggar Barber, in all respects similar to the order made in the Leggett matter, was made in said Barber matter.   Such proceedings were had before said referee in the Leggett matter, that on the 1st day of August, 1855, the said referee made his report, by which he found that the interests of the present and future descendants of the said Susan Post Leggett would be promoted by a sale of said property, situate in the city of Brooklyn.   The referee, at the same time, made a similar report in the matter of the application of Mrs. Barber.   Upon reading and filing this report, an order was made, at a special term of the supreme court, on the 30th of November, 1855, confirming the same and directing William H. Leggett, as trustee of Susan P. Leggett and her descendants, in conjunction with Wessell S. Smith, the special guardian of the infants, to sell, at public auction, in fee simple absolute, all the right, title and interest, of the said Susan Post Leggett, and her descendants in being, and those to be born, in and to all the several lots and parcels of said real estate in the city of Brooklyn aforesaid, upon the terms and conditions specified in said report.   And it was further ordered, that before executing any deed or instrument of conveyance of the said premises, or any part thereof, to the purchaser or purchasers thereof, the said trustee and special guardian should report to the court upon oath the sales so made.

In pursuance of the above order, the trustee and special guardian aforesaid proceeded to advertise and sell said premises at public auction, and on May 13th, 1856, made sale of a portion thereof to several purchasers, who paid the ten per cent, and signed the terms of sale and agreement for their several and respective purchases.   On May 29, 1856, the said trustee and special guardian made their several reports in both matters to the said court.

On the 6th of June, 1856, an order was made, at a special

term of the court; confirming this report, and directing that upon the said purchasers complying with the terms and conditions upon which by the said agreements of sale respectively the deeds were to be delivered, the said trustee and special guardian should execute and deliver to the said purchasers respectively good and sufficient conveyances in fee simple absolute of the said premises struck off to them, and of all the estate, right, title and interest of the said Susan Post Leggett, and her descendants in being, and those to be born, in and to the said several lots and parcels of land, so struck off to said purchasers respectively; and that the said Edward W. Leggett, and Susan Post Leggett his wife, execute and acknowledge the said deeds, releasing and conveying all their estate, right, title and interest in said lots and premises so sold.

At the same time a similar order was made and entered in the Barber matter. On June 18th, 1856, the said trustee and special guardian sold the remainder of the said premises remaining unsold from the first sale; and on June 20th, 1856, made their several reports to the court, which were also confirmed, and deeds directed to be executed to the purchasers.

The above named defendants, William Hunter, junior, Daniel McCabe, Benjamin F. Delano and Nathaniel S. Bailey, were severally purchasers, at the respective sales above mentioned, of the several lots in the several reports of sales above specified. They have each paid the ten per cent required by the terms of sale on their respective purchases, and signed the terms of sale and agreement above set forth. On the days respectively specified in said terms of sale, the said William H. Leggett, trustee as aforesaid, tendered to each of the defendants conveyances for their several and respective purchases. Such deeds recited the making the will of Gerardus Post, and the substance thereof; the passage of the acts of the legislature authorizing the trustee to sell the property in question with the consent of the court of chancery; the application to the court for such leave; and the several proceedings had thereon, down to the final order directing conveyances to be executed by the said Leggett as trustee and W. S. Smith as special guardian, and that

Leggett v. Hunter.

Wm. T. Barber and his wife join in such conveyances. The grantors then, by virtue and in pursuance of the power and authority vested in and given to them, and each and every of them respectively as aforesaid, and for and in consideration of the sum at which the several lots were struck off to the purchasers respectively, granted, bargained, sold, remised, released and conveyed unto the grantee therein, his heirs and assigns forever, the premises therein described, together with all the estate, right, title and interest of the said Susan Post Leggett, or Mary Jaggar Barber, and her descendants in being, and those to be born, in and to the said premises. To have and to hold the said premises, and every part and parcel thereof, with the appurtenances, to the grantee, his heirs and assigns, to his and their only proper use, benefit and behoof forever. And the said parties of the second part, Wm. T. Barber and his wife, in consideration of the premises, and of one dollar to them paid, the receipt whereof was acknowledged, granted, bargained, sold, released and confirmed, unto the grantee and to his heirs and assigns forever, all their and each of their right, title, interest, estate, claim and demand in and to the said above described premises, with all and singular the hereditaments and appurtenances thereunto belonging.

The defendants Hunter, McCabe, Delano and Bailey, refused to receive their deeds, and to complete their said several and respective purchases; and the following questions now arose for the decision of the court, viz: 1. Had William H. Leggett, as the substituted trustee, power under the will to sell and convey the property in question, or did he acquire any such power by order of the court above set forth? 2. Or did the recited acts of the legislature and the proceedings above set forth, confer any such power? 3. Can the purchasers above named acquire a perfect title in fee simple, under and by virtue of the deeds tendered as aforesaid?

*John A. Lott*, for the plaintiff. I. The acts of the legislature referred to in the case, in express terms, authorize a sale in fee simple of the premises in question, and the conveyance

of a perfect title to the purchasers thereof, on compliance with the requirements of the provisions of those acts. (*Sess. Laws of* 1853, *ch.* 442 *and* 443.)

II. Those acts are not unconstitutional. (1.) The object of the legislature was to authorize a change of the property from real into personal estate, for purposes beneficial to the parties interested therein. The title of those parties is in no manner impaired, nor are they deprived of any rights. The proceeds of the sales are to be applied, so much thereof as is necessary, to the discharge of charges and incumbrances, and the residue in the same manner as was directed by the will of the testator in relation to the real estate. (*See* §§ 1 *and* 3 *of those acts.*) The power of the legislature to convert real into personal estate is unquestionable. It is analogous to the power exercised by the British parliament, on similar subjects, time out of mind. (*See* 2 *Black. Com. ch.* 21, *p.* 354, *and note* 2, *by Chitty, at p.* 255 *of his edition.*) And it has been constantly exercised in this state. The acts authorizing the sale of the real estate of infants, drunkards, lunatics, and persons of unsound mind, and all acts of a similar nature, derive their force from the exercise of that power. So also does the act in relation to the partition of real estate, so far as it authorizes a *sale* instead of an actual *partition* against the will of the parties, by virtue of which, rights *contingent* as well as vested are conveyed and pass to the purchaser. (1.) The validity of acts similar to those under consideration, but much less free from exception, has been sanctioned by our courts. (*See Clarke* v. *Van Surlay,* 15 *Wend.* 442; *Cochran* v. *Van Surlay,* 20 *id.* 365; *Williamson* v. *Barry,* 8 *How.* 494, *&c.*) It is true that the sales under the acts referred to in the last case were held void, contrary to the decision in *Clark* v. *Van Surlay,* and *Cochran* v. *Van Surlay,* above cited; but the decision was placed on the ground that they were not made in compliance with the requirements of those acts. The constitutionality of the acts themselves was not questioned; on the contrary, the circuit court of the southern district of New York, from whom the cause was carried to the supreme court, on a certificate of division of opinion

between the judges on certain points, expressly adjudged as the 4th point decided by them, that "the acts of the legislature of the state of New York, of April 1, 1814 ; March 24, 1815; and March 29, 1816, referred to in the case, are constitutional and valid." See judgment of the circuit court, at pages 509 and 510, of the case. See also in support of the principle, *Wilkinson* v. *Leland*, (2 *Peters*, 660, &c. ;) *Watkins* v. *Holman*, (16 *Peters*, 59, &c. ;) *Rice* v. *Parkman*, (16 *Mass. R.* 326 ;) *Baker* v. *Lorillard*, (4 *Comst.* 267.) In the last case the power of the legislature to change real into personal estate, is ably discussed, and particular attention is called to it. (3.) The case of *Powers and Wyckoff* v. *Bergen*, (2 *Selden*, 358,) is not in conflict with the preceding positions. It is distinguishable from the present case in several points, deemed material by the court, and especially in the following particulars. 1st. The statutes under which the sale in that case was made, authorized the trustees to sell without any adjudication by any court, as to the necessity or propriety of a sale ; and according to the construction of the court, nothing appeared on the face of those statutes, or by the case, showing what facts existed to induce the legislature to enact them. 2d. It did not appear from the facts as stated in the opinion of the court, that any incapacity existed, by reason of infancy or otherwise, disqualifying the remaindermen from disposing of the estate in the lands themselves ; and that evidently had a controlling influence in their decision. They say, "Conceding that it is within the power of the legislature, in acting as the guardian and protector of those who are disabled to act for themselves by reason of infancy, lunacy, or other like causes, constitutionally to pass general or private laws, under which an effectual disposition of their lands, and other property may be made, *in order to promote their interests,* it does not follow that it has such power of disposition over the property and effects of others not thus incapacitated." These objections are obviated in the present case.

III. All the requirements of the acts under which the sales

in question were made, have been fully complied with, and no objection is made to the title on the ground of irregularity in the proceedings, or for want of conformity to those requirements. It is established by the proofs in those proceedings, and adjudged by the court, that a sale of the premises in question was expedient, and calculated to promote the interests of all parties to be affected by it.

IV. William H. Leggett as the substituted trustee, under the will of Gerardus Post, deceased, had power under the provisions of that will, with the consent of the court, to sell and convey the property in question, irrespective of the acts of the legislature above referred to. Caleb S. Woodhull, the only executor who qualified, made a sale of the testator's interest in the farm of which the premises in question are part, and received back a bond and mortgage for the purchase money. That mortgage was foreclosed, and the mortgaged premises were purchased at the sale thereof, by the said Caleb S. Woodhull as executor as aforesaid. He subsequently conveyed one tenth part thereof to William Post, a son of the testator, who afterwards commenced proceedings in partition, and the lots in question were allotted to Mrs. Leggett and Mrs. Barber, and their respective descendants, subject to the estate and interest therein of William H. Leggett, trustee under said will, who had been substituted as such during the progress of the partition suit, and to whom the said Caleb S. Woodhull had conveyed all the trust property in his possession, subject to his control, or in which he had an interest in trust, for the purposes mentioned in said will. (2 *Kernan*, 294. 2 *Comst.* 297.)

V. The deed tendered to the defendants was, therefore, sufficient to vest a good and perfect title in them. It was not only executed in compliance with the provisions of those acts, but also with the will of Gerardus Post.

VI. Judgment should, therefore, be given that the defendants pay the moneys which were required by the terms of sale to be paid, with interest from the time of the tender of the deed, and that they, in other respects, specifically perform the said agreement.

Leggett v. Hunter.

*J. M. Greenwood*, for the defendants. I. The plaintiff as trustee, could derive no power of sale under the will of the testator. The powers and trusts were conferred on three executors and trustees, naming them. The supreme court had no power to clothe Leggett with the powers conferred by the will on the executors, as sought to be done in their orders; for the trusts could only be executed by those on whom they were conferred, and they must all join. (*Sinclair* v. *Jackson*, 8 *Cowen*, 583. *Green* v. *Miller*, 6 *John.* 39.)

II. There was a contingent remainder created by the will, and existing during the lives of Susan and Mary Jaggar. (2 *R. S.* 132, 4*th ed.*) It was not a vested remainder, unless subject to be varied and defeated, and to let in after-born children. And children not in being at the time of the sale, were not, and could not be, affected by it. (*Baker* v. *Lorillard*, 4 *Comst.* 257. *See Bronson's opinion. Powers & Wyckoff* v. *Bergen*, 2 *Seld.* 358.)

III. To authorize the court of chancery to make a sale, the infants must be seised of the property. Its only jurisdiction is derived from the statute. (*Laws of* 1814, *p.* 128, § 1. 2 *R. S.* 359. *Baker* v. *Lorillard*, 4 *Comst.* 257.)

IV. The recited acts of the legislature were unconstitutional and void. The will was valid under the general laws of the state, when made and proved; and no after legislation can alter or destroy its intent. The legislature could not divest the title, or the contingent interests of persons not then in being. (*Cochran* v. *Van Surlay*, 20 *Wend.* 375. *See opinion of Chancellor. Powers* v. *Bergen*, 2 *Selden*, 358.)

V. It could not be sold under the statute authorizing a sale of infants' estate for taxes and assessments, for they are alleged to be paid, in one suit.

VI. The premises should have been sold in the county of Kings, where the premises are all situate.

VII. The title tendered to the defendants is defective, and they were not obliged to accept the same.

*By the Court*, S. B. Strong, P. J. The deeds in these cases were executed by the acting (and alleged to be the legitimate)

trustee; the person entitled to receive and use, the income, or rents 'and profits, of the land intended to be conveyed during her life, and her husband; and the special guardian of their present children who were at the time seised of, or entitled to, the remainder. No objection has been raised to the form of the deeds, or to the mode of the antecedent proceedings, so that the grantees would confessedly take whatever estate it was in the power of the grantees, any or either of them, to convey. If that was a fee simple absolute, then the defendants must take their deeds and complete their several purchases; otherwise not.

It was decided by the court of appeals, in *Leggett* v. *Perkins*, (2 *Comst.* 297,) that the devises in the will of Gerardus Post to, or in favor of, his daughters, Mrs. Leggett and Mrs. Barber, during their respective lives, were valid, and vested the legal estate in the trustees. The objection to the devises was that the trustees were directed to pay over to (and not, in the words of the revised statutes, apply to the use of,) the daughters the rents, interest or net income of the lands devised, or subsequently to be purchased; and it was also supposed that as there was no direct devise of the real estate to the trustees they did not take the legal fee. The court decided that there was no substantial difference between the direction to pay over the income, and the statutory requisition to apply it, and that the authority to the trustees to receive and pay over the rents or net income gave to them, by implication, the legal estate, within the principle established in the case of *Brewster* v. *Striker*, (2 *Comst.* 19.) I was a member of that court when *Leggett* v. *Perkins* was decided, and concurred with Judges Bronson and Jewett, against the opinion of the majority. And I have entertained serious doubts as to the accuracy of the decision in *Brewster* v. *Striker*. There are no very cogent reasons, however, (such as were alluded to by Judge Harris in *Baker* v. *Lorillard*, 4 *Comst.* 261,) for overruling those decisions in the court where they were rendered, and they must be considered— especially by inferior tribunals—as the settled law.

It was contended by the counsel for the defendants that the power to sell the testator's lands was given to the executors, in

Leggett *v.* Hunter.

that capacity, and not as general trustees, and that therefore it could not be transferred to another by an order of a court of equity. It is true that when executors take a power to sell real estate, in order that the proceeds may be appropriated by them in the discharge of the duties ordinarily devolved upon them, such as to pay debts, or to make any appropriation in such a manner that the proceeds might be considered as assets, there might be an incongruity in the substitution of others by a tribunal not intrusted with jurisdiction over the settlement of the estates of deceased persons. But in this instance, the testator, in another clause of his will, appoints the persons whom he makes executors, " trustees to the estates" of his two daughters, and authorizes them to take care of, manage and improve the same, and to pay over to the daughters the net residue thereof; and he directs the executors, after the primary sale of his real estate, to put out and invest the shares of the proceeds belonging to his daughters, with authority in the execution of their trust, to invest such proceeds, or some part thereof, in the purchase of real estate for the use and benefit of his daughters ; and in further execution of their trust, to sell the same, or any such estate so purchased, with the allowance of the court of chancery first had and obtained for that purpose. These powers are conferred, and the implied estate devolved, upon the donees, not as executors but as ordinary trustees, such as are designated in our statutes relative to uses and trusts. The allusion to them as executors is merely a convenient way of designating the persons, and is not designed to mark the capacity in which they are to take. Besides, the provision that the sales of the real estate of the daughters must be allowed by a court of equity, is a clear indication that they are not to act in a capacity which might subject them to the jurisdiction of a different tribunal. I have admitted, in effect, that a court of equity cannot substitute new executors, as such, for those named by the testator. But when their duties as executors have terminated, and they have become simply trustees, it seems to me that the power conferred by the revised statutes, (1 *R. S.* 730, §§ 69, 71,) upon courts of equity, to compel the resignation of a trustee, and to appoint another

in his place, is applicable and may be exercised. The statute (§ 69) uses the terms "any trustee," and the expressions are broad enough to include all who are intrusted with the management of real estate in that capacity. The provisions of the sections which I have quoted are also made applicable to the grantees of powers in trust. (§ 102.)

In the case under consideration the sole acting, and so far as is indicated by the papers, the then sole surviving, trustee (Mayor Woodhull) resigned his office, and his resignation was accepted by this court, and the plaintiff, William H. Leggett, was appointed in his place, and of course with the same powers. The proceedings, it is true, were not very formal, but they were substantially effective.

The lands in question had been confessedly legally sold by Woodhull, under the general power given in the ninth clause of the will, " to sell the testator's estate." He had secured the purchase money by a mortgage on the real estate sold, pursuant to a direction in the fifth clause, and had, under the same clause, subsequently purchased such real estate, in part for the benefit of the testator's daughters. There had not been any division of the proceeds when the real estate was originally sold, nor was the subsequent purchase solely for the daughters, but there was afterwards a partition between the testator's children, to which the acting trustee was a party. And after that, and until his resignation, he held the lands in question as their shares, and as I consider, under the fifth clause of the will. If so, he, before such resignation, and the plaintiff William H. Leggett afterwards, had the power to sell such lands, with the approbation of this court. The sales were made by such substituted trustee with the required approbation; and it seems to me that a deed from him alone would have conveyed a good title to the land. If so, the facts that it had been sanctioned by an act of the legislature, and that others had joined with him in the conveyance, would not, surely, vitiate or impair the title.

If the conveyances by the ladies entitled to the income of the lands in question, and their husbands, would be simply or at all conveyances of their income, and without express legislative

sanction, they would have been void under the 63d section of the revised statutes relative to uses and trusts. But it was competent for the legislature to relieve them from such restriction, at any rate where there was no invasion of the vested rights of others ; and that was done by the act entitled " An act relative to the lands held in trust by William H. Leggett for the benefit of Susan Post Legett and her descendants," and a similar act relative to the lands held for Mrs. Barber, and her descendants, passed June 21, 1853. In the 4th section it was provided, expressly, that conveyances under it, executed by the trustee, by the ladies and their husbands, and by the special guardian of their infant children, should vest in the purchasers a fee simple absolute against all persons having any claim to, or interest in, the premises, under the will of Gerardus Post. That of course sanctioned the proposed conveyances by Mrs. Post and Mrs. Barber and their husbands, if any such conveyances were necessary to complete the title of the purchasers.

Then as to the children of Mrs. Post and Mrs. Barber. As those in esse were minors, the legislature had confessedly the power to authorize the conversion of their real estate into personal property, if satisfied, (as it no doubt was,) that such change would be for their benefit. Those children were, at the time when the act was passed, seised of the entire remainder. That remainder, it is true, was subject to open in favor of after-born children of their mothers, but as to those children there was not, of course, any vested interest. All that could be claimed in their behalf was that they should receive their portion of the proceeds, and of that they would not be deprived by the act, or the procedure under it. I am inclined to agree with Judge Harris, who gave the leading opinion in *Baker* v. *Lorillard*, (4 *Comst.* 266, 267,) that children in being who have a vested remainder in fee subject to open to let in after born children of the same parent, may be regarded as holding the legal estate not only for their own benefit but as trustees of such after-born children ; and that a sale may carry the interest of the after-born children as well as of those in being at the time. Especially is this true if the sale is expressly

sanctioned by an act of the legislature providing in effect that it must be made manifest to the court ordering and confirming the sale, that it would be expedient, and calculated to promote the interests of the children, whether then in being or not, and that a conveyance under the act would carry the fee against the after-born, as well as the existing, children. Under this legislation, no injustice can be done to the after-born children, if any there should be ; and I cannot see why the proceedings under it will not pass their contingent estate. No question was made in this case but that the special guardian of the existing children was duly appointed ; and there can be no doubt but that a conveyance to which he is a party will effectually pass their estate, if indeed that would not pass by a deed from the trustee.

As the defendants would, in my opinion, acquire a valid title to the premises purchased by them, under the proposed conveyances, they should be required to complete their respective purchases.

No costs should be awarded.

[Orange General Term, July 14, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]