# The New York Dry Dock Company *v.* Timothy Stillman and others.

In November, 1834, S., having previously acquired the title to certain lands at D. for the benefit of himself and others, conveyed one moiety thereof to N. On the same day an agreement was entered into between S. and N., by which they agreed each with the other to convey one undivided fourth part of said lands to the N Y. & E. Railroad Company, on condition that said company should, within seven years, construct a single track of their road to D. But that if said company should fail to perform that condition they would divide the said one-fourth part of the land between themselves. On the 8th of January, 1838, the several persons interested in the lands, including the railroad company, agreed on a plan for dividing the same amongst themselves; in pursuance of which all the parties interested conveyed, by deeds absolute on their face, their interests in the land, including the railroad company's shares, to N., who was to convey to such parties the portions of the land to which they were respectively entitled, except that the share of the railroad company was to be conveyed to N and K. in trust to convey the same to the company on the performance of the condition aforesaid; but if the company should fail to perform that condition, then the trustees were to divide the lands, or their proceeds, amongst the persons interested therein. N. thereupon conveyed the portion of the lands intended for the railroad company to T., who conveyed the same to N. and K. and the latter gave back to the railroad company a declaration of trust, setting forth the terms and conditions on which they held the land. and a like declaration setting forth the terms and conditions on which they were to convey the same, or divide the proceeds amongst the parties interested therein. All these conveyances were executed and delivered on the 1st and 2d of March, 1838. The railroad company failed to perform the condition upon which the land was to be conveyed to it. On the 26th of October, 1838, a judgment was docketed against S. in favor of G., on which the land forming the railroad company's share was sold by the sheriff, and was redeemed by the plaintiffs as assignees of a junior judgment, who received a deed from the sheriff. In 1850 N. and K. sold the shares of the railroad company, and the proceeds of ten parts thereof, belonging to S. under the declaration, amounted to $11,226.83, which was the fund in controversy. The defendant claimed the same under a subsequent judgment against S. and a creditor's bill founded thereon.

*Held*, 1. That a valid trust was not created by all or any of the conveyances executed by the parties, in respect to the share of the lands intended for the railroad company, the trust attempted to be created not being for either of the purposes for which alone express trusts are permitted.

2. That although the trust was void, there was a valid power in trust vested in N. and K. by the conveyance of March 1, 1838.

3. That there being no legal interest in S. on the 26th of October, 1838, on which the judgment of G. could be a lien, the title of the plaintiffs to relief must fail.

4. That the arrangement between the parties interested in the land prior to March 1, 1838, created no trust. That their rights and liabilities rested in covenant, whereby each owner agreed to give a portion of his land to the railroad company, and that the title did not pass charged with any such obligation, except so far as either party had the right in equity to compel a specific performance.

5. That S. did not, as the beneficiary of the power in trust, become, by virtue of section forty-seven of the statute of uses and trusts, vested with a legal estate in the land, upon the failure of the trust estate to vest in N. and K.

6. That it was not until the declaration of trust in behalf of the respective owners took effect that S. was clothed with any interest whatever in the lands, or their proceeds. That the interest he then acquired was an equitable title to enforce the execution of the power and the sale of the lands for an account and distribution of the proceeds.

## *Appeal from a judgment of the Supreme Court.*

THE principal question was whether Walter Smith, on the 26th day of October, 1838, had any legal estate in certain lands at Dunkirk set apart as and for the share of the New York and Erie Railroad Company, which was bound by the lien of a judgment recovered against him on that day by Isaac E. Guernsey, and which lands, being sold on an execution issued thereon, were redeemed by the plaintiffs as assignees of a junior judgment recovered by Obadiah Holmes on the 6th day of May, 1839. The plaintiffs claimed that Smith had the legal estate in that share. The appellant Stillman claimed that he had no such estate, but, if any, at most only an equitable interest not subject to any lien of the judgment, and not capable of a sale on the execution, and that he acquired all the interest of Smith under an assignment made by him for the benefit of creditors, and a purchase from and a conveyance by a receiver in a creditor's suit against Smith upon a judgment recovered on the first Monday of January, 1840, against Smith

by Chauncey Tucker, and also under an assignment to him by Smith on the 9th August, 1848. The dispute was about the proceeds of the lands; which, subsequent to the attempted redemption, were sold by trustees in whom a power in trust had been created, as held by the court below, by a conveyance to them, amounting to $11,226.83. Another question was whether the plaintiffs could purchase and hold these lands by way of redemption under the statute, under a judgment purchased by and assigned to them for a purpose not within their charter.

Walter Smith, in the year 1834, had the legal title to a large tract of land at Dunkirk, which he held for and with the consent of several associates, in his own name, having taken the conveyances thereof with their approbation; so that there was no resulting trust in their favor, although they paid portions of the purchase money. About the same time, and by several conveyances, with the like assent of his associates, of whom Russel H. Nevins was one, Smith conveyed one-half of the lands to Nevins by absolute deeds. At the time of each conveyance he and Nevins entered into an agreement with each other providing, among other things, that in case the New York and Erie Railroad Company should within seven years construct and finish their railway by a single track from Owego to Dunkirk, they would convey to the company "as a free gratuity" one-fourth of the lands, or would sell such one-fourth and give the company the proceeds. The title to the lands remained in Smith and Nevins, with the consent of their associates, until January, 1838, when they met, and by resolution agreed upon a committee of two of their number "to prepare a division of lands and property at Dunkirk, so that one-fourth should be held subject to the conditions of the grant originally made to the railroad company, and the remaining three-fourths to be divided in half shares among the proprietors, in order that proper deeds may be duly executed." This division was made by lot; the one-fourth

for the railroad company, upon which the question in this case arises, being drawn by itself as one of the proprietor's shares and constituting a separate parcel. Other distinct parcels were allotted to each proprietor. It was then agreed that "the whole title and estate in the lands, and in every part thereof, should be vested in Nevins in fee, and that he should thereupon execute and deliver conveyances to the proprietors respectively of the shares drawn by him, upon the payment by them of the proportion of the claims and expenses to which such respective shares were liable." As to the railroad company's one-fourth share, it was agreed that it should be conveyed to and vested in Nevins and Charles C. King as trustees, subject to the performance of the conditions upon which their title was to become absolute, "reserving thereupon the amount of the expenses for money, taxes, and other matters, properly chargeable to the one-fourth of the property." In order to carry into effect the division and distribution thus made, on the 1st day of March, 1838, Smith & Nevins, and all the other proprietors, having or claiming any interest in the lands, including the railroad company, executed deeds of conveyance, absolute on their face, vesting all their interest in the lands, including the railroad company's shares, in Nevins. These conveyances being voluntary, and the grantee of their own selection, there could be no resulting trust in favor of the grantors; and the title became absolute in Nevins, including the railroad company's share, and Smith had no legal estate in any part of the lands. Nevins then conveyed to the proprietors who had paid for their shares the lots drawn by him. Then, in order to carry the agreement into effect, as to the railroad company's share, on the same 1st day of March, 1838, Nevins, with the consent of all the proprietors, by deed, conveyed that share (except one block omitted by mistake) to Elihu Townsend, his heirs and assigns forever, subject to the conditions, and reserving the amount of expenses, &c., and

12

then Townsend and wife conveyed it to Nevins and King as joint tenants and not as tenants in common. Then Nevins and King, on the 1st and 2d days of March, 1838, executed two declarations of trust; one to the railroad company, and the other to the other proprietors; the first declaring the interest of the railroad company, as already stated; and the second, that of these proprietors in case the railroad company did not perform the condition by completing the single track from Owego to Dunkirk within the seven years, and providing, in case that event did not occur (as it did not), that they would sell the railroad company's share of the land and pay the net proceeds to the proprietors in certain proportions; that of Smith being ten shares. On the 4th January, 1840, Smith being insolvent, made an assignment of all his property to four trustees, in trust for creditors. On the 20th January, 1843, the land forming the railroad company's share, was sold by the sheriff on the judgment of Guernsey against Smith, and was redeemed by the plaintiffs within fifteen months, as assignees of the judgment of Holmes against Smith, and they received a sheriff's deed. On the first Monday of January, 1840, Tucker recovered, his judgment against Smith, and upon a creditor's bill based upon the return of an execution unsatisfied, on the 10th day of April, 1845, obtained a decree, setting aside Smith's assignment for the benefit of creditors; the assignees and Smith were decreed to convey everything to a receiver who was declared vested with all his interests, and the receiver subsequently, and on the 25th day of November, 1853, sold and conveyed all Smith's interest in the railroad company's share, &c., at auction to the appellant Stillman. Stillman had previously, and on the 9th day of August, 1848, obtained a conveyance of all Smith's interest in that share. It was expressly found that none of the conveyances by Smith to Nevins were fraudulent as to creditors, and no such fact was alleged in the complaint. In June, 1850, Nevins and King sold the shares

of the railroad company, and the proceeds of ten parts of it belonging to Smith under the declaration of trust, equivalent to $11,226.83, which is the fund now in controversy. It was claimed that if Smith had a legal estate in the lands forming the railroad company's share, it passed under the sheriff's deed, and the plaintiffs, if authorized to redeem, would be entitled to the fund; if not, that it passed to the appellant Stillman, through the receiver, and he is entitled to it.

The referee who heard the cause, and the general term of the supreme court, in the eighth district, decided that the trust to sell in Nevins and King was invalid as a trust, but good as a power in trust; that the legal estate in the land remained in Smith, and the plaintiffs were entitled to the fund. Stillman excepted and appealed to this court.

*Wm. Curtis Noyes*, for the appellant.

I. The conveyances by Smith to Nevins, and by Nevins to Townsend, were made with the full assent and approbation of all the associates who had paid in part and were paying the purchase money; each was absolute on its face, unaccompanied by any valid trust or any declaration thereof, or any power in trust, and vested the entire title to the lands in fee simple in each successive grantee, leaving no legal or equitable estate in Smith.

II. It was the intention and agreement of all the parties to vest the whole title and estate in the lands, first in Nevins, and then in Townsend; and that neither of them individually should be charged with, or assume any trust in regard to them. In fact, no trust was declared, nor did any exist as to either of them, and hence the sixth section of the statute of frauds was directly applicable, inasmuch as it declares that "No &ast; &ast; &ast; trust or power over, or concerning lands, or in any manner relating thereto shall be created, granted, assigned, surrendered or declared unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, assigning,

surrendering or declaring the same." (2 R. S. 134, § 6.) The seventh section then declares that the preceding section should not be construed to "prevent any trust from arising or being extinguished, by implication or operation of law, &c.," which was amended in 1860, by inserting the words "Nor to prevent any declaration of trust from being proved by any writing subscribed by the party declaring the same." (Laws 1860, ch. 322.) It was held, under the original sixth section, that it was necessary that the trust should be declared by some deed or conveyance actually subscribed by the party charged with the trust (*Wright* v. *Douglas*, 3 Selden, 564); and the effect of the amendment would seem to be to dispense with the "deed or conveyance," and to recognize a trust as valid, although declared by a less formal instrument, if actually subscribed. In this case there was neither, and therefore no trust could exist either in Nevins or Townsend.

III. Nor could any trust in either of them arise " by act or operation of law;" inasmuch as all the parties who assented to the conveyances, and had paid as much of the consideration money as had been paid, and were to pay the balance, well knew and approved of the making of the conveyances to them precisely as they were made; and were, of course, chargeable with knowledge of the law, which prevents any such trusts from arising. (1 R. S. 728, § 51; *Norton* v. *Stone*, 8 Paige, 222; *Brewster* v. *Power*, 10 id. 562.)

IV. No trust whatever could result from such a transaction, except in favor of the creditors of these persons interested in and who paid for the lands, who assented to the conveyances (1 R. S. 728, § 52); but such a trust could not constitute any legal or equitable estate in their favor or in favor of their creditors, in the land, but simply a pure trust enforceable only in equity. Hence, it has been held that the land is not subject to any lien of a judgment in favor of a creditor against the party interested in the land

when the conveyance was made, and that it is not subject to sale on an execution against him. (*Garfield* v. *Hatmaker*, 15 N. Y. 475; 2 R. S. 368, § 26.)

V. The opinion of the court below seems to concede that the whole estate and title in the lands did vest in Townsend, because it assumes that Nevins & King obtained valid power, in trust from them, to sell the lands for the benefit of Smith and his associates; and yet it seems to assume also that the same legal title passed from Smith to Townsend, so that the judgment became a lien upon it. But these two propositions are contradictory; for, if the contemplated trust was invalid as such, and only sustainable as a power in trust, then the legal estate remained in Townsend until divested by the execution of the power, as the legal title could not pass to Smith and his associates as beneficiaries, giving them an absolute title, and the trust remain valid as a power, in order to divest that power by a sale for their own benefit. In other words, if the legal title passed to Smith and his associates as beneficiaries, the power became inoperative; if the power was valid, no legal title vested in Smith and his associates, but remained in Townsend.

VI. And this is the rule as declared by the revised statutes: if the trust be invalid as such, because not allowed by the fifty-fifth section, but is valid as a power in trust, no title vests in the trustee, but it remains in the donor, or creator of the trust or power, until divested by the execution of the power.

1. Section forty-nine of the revised statutes, as to uses and trusts, only prohibits the vesting of any "estate or interest" in the trustee; no estate or interest is given to the beneficiary. (1 R. S. 728, § 49.)

2. Nor under the forty-seventh section would the legal estate vest in the beneficiaries, because they were not entitled to the "actual possession of the lands, or the receipt of the rents and profits."

3. Besides, the case of a trust invalid as such, but valid as a power in trust, is expressly provided for by sections fifty-eight and fifty-nine, the last of which declares that the lands "shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust as a power."

4. This is, moreover, the view taken of the sections in question by Comstock, J., of this court, who, in construing these provisions of the statute of uses and trusts, says: "The result is* that express trusts (using that term in the strict technical sense, as descriptive of legal titles, vested in a trustee for the fiduciary purposes declared in the instrument) were abridged, and confined to the enumerated classes. But the trust limitation, although not belonging to that class, if not otherwise unlawful, will be effectuated in a different mode. If of a passive character, the use is executed by vesting the title in the beneficiary. If active, it takes effect as a power in trust, leaving the title in the donor or his heirs, subject to the power." (*Downing* v. *Marshall*, 23 N. Y. 380.)

5. Again, the trust, or power in trust in this case, could only have been created by the "owner of the estate, or one having authority to dispose of it, or of some interest therein;" and this was Townsend, to whom the lands were conveyed for this purpose (*Selden* v. *Vermilyea*, 3 Comst. 525), and it is plain that any estate or interest not embraced in the trust or power, and not otherwise disposed of, remained in or reverted to the person who created such trust or power, who was Townsend and not Smith. (*Sterricker* v. *Dickinson*, 9 Barb. 519; 1 R. S. 729, § 62. Same rule as to express trusts; 4 Kent's Com. 210; *Briggs* v. *Davis*, 21 N. Y. 574.)

6. Again, to hold that any legal estate vested in Smith and his associates, would violate the plain intention of the parties and render null much of what they had done; for, having once had the title, they intentionally divested them-

selves of it and conveyed it to Townsend, else they would have conveyed directly to Nevins and King; and, besides, they intended to leave the legal title in Townsend until it became necessary to execute the power in favor of the railroad company, until it was ascertained whether they would perform the condition upon which their title was to become perfect. The intention of all the parties, so plainly shown, cannot thus be violated. (*Rawson* v. *Lampman*, 1 Seld. 456; *Ring* v. *McCoun*, 6 id. 268.)

VII. Where, therefore, Smith and his associates had no legal estate in the lands subject to the lien of a judgment, or liable to be sold on execution, yet they had an interest in the execution of the power upon the failure of the railroad company to perform the condition which they or their assignees could then compel in equity, and so could their creditors. (1 R. S. 734, § 93; 735, § 143.)

VIII. The appellant Stillman became entitled to Smith's share of the lands and their proceeds, under Smith's assignment to his assignees, and the receiver in the judgment creditor's suit, and by his deed or assignment from the receiver; having purchased the interest at the receiver's sale.

IX. The plaintiffs' charter only authorized them " at any place or places in the city and county of New York, and also at any place or places in the county of Kings, to construct and use one or more dry and wet docks, and other artificial means or basins, of such dimensions and materials and in such form and manner as they may deem expedient for the purpose of building, receiving and repairing ships or vessels; and shall be capable in law of holding such estate or property as may be necessary for the accommodation and furtherance of their said business and concern," (Laws 1825, ch. 114, § 1,) and did not warrant their redeeming; or—what is the same thing—purchasing and holding real estate elsewhere; and hence, they had no right to redeem or take the deed for the lands, the proceeds of which are in controversy.

1. No express power to redeem on judgments in their favor was given, as was done in the charter of the Chautauque County Bank; and the general powers of corporations as conferred by the revised statutes, are not more extensive than the charter itself. ' (1 R. S. 599, § 1, sub. 4; *Chautauque County Bank* v. *Risley*, 4 Denio, 480; S. C. 19 N. Y. R. 369.)

2. The decision in favor of the right of the bank in the case cited, to take a sheriff's deed, did not involve any determination as to the right to redeem; for there, the time for a second redemption had expired, and the bank purchased the sheriff's certificate of sale, and took the deed as assignee of the purchaser, having themselves previously assigned two of the judgments in their favor, on which a redemption had been made by the assignee of the certificate, as their agent. In other words, they took the deed, in satisfaction of a debt, which the charter expressly authorized.

3. To sustain the purchase in this case, it must be held that the plaintiffs may buy up judgments against any person, which will authorize a general dealing in them, and then may redeem and hold any quantity of real estate it may be able to obtain by such methods.

X. If it be conceded that the conveyances to Nevins and King, with the covenants or declarations of trust executed by them to the grantors, and the Erie Railroad Company created an express trust, and that such trust, was not void under section 55 of the statute of trusts, so that the legal title and estate remained in the grantors still,

1. The trust in Nevins and King was void as a trust, but valid as a power in trust (2 R. S. 729, § 58), not for the benefit of Smith alone, but for the joint as well as several benefit of each and all the grantees; the execution of which power could have been enforced in equity by either or all of them, or by the respective assignees of their beneficial interest.   (Id. 734, § 96.)

2. It was a special power in trust, such as is provided for in subdivision 2 of section 95, embracing a class of persons (as to each share of the railroad company and the other grantees) and not a power in trust for each of them, severally or alone.

3. Smith, prior to the appointment of the receiver, could have compelled the execution of the power—so could his assignee in insolvency, and so could the receiver after his appointment; and this, whether he had become vested with the legal estate of Smith in the land or not. (Id. 735, § 104.)

4. The interest of Smith, as beneficiary, under the power in trust, was contingent upon the failure of the railroad company to perform the condition upon which they would become entitled, and was entirely distinct and different from any strict legal estate he had in the land; so that if he had conveyed such legal estate by deed, the grantee would have taken it, subject to the execution of the power. Until such execution, the grantee would have been entitled to possession, and to the rents and profits; but would not, as simply grantee, and in the absence of any covenants to that effect, have been entitled upon a sale under the power, to a share of the proceeds of the land as beneficiary under it, as against an assignee of Smith's beneficial interest.

5. So Smith could at any time have sold his contingent interest as beneficiary under the power, retaining the legal estate in the land, and until the latter should be divested by a sale under the power, enjoying the rents and profits.

6. If the sale on the execution and the sheriff's deed, vested in the plaintiff the legal estate of Smith, which was only an estate subject to be divested by the execution of the power, they were only entitled to receive the rents and profits until the sale in execution of the power, and acquired no other estate or interest.

7. It follows, therefore, that the equitable and beneficial interest of Smith in the power in trust, being a distinct

and separate interest, did not pass to the plaintiffs by the sheriff's deed.

8. As a necessary result, therefore, Stillman, as the purchaser at the receiver's sale of Smith's beneficial interest in the execution of the power, which was entirely distinct and different from any legal estate he may have had in the land, is entitled to the proceeds arising from the execution of the power.

*C. Tucker*, for the respondent.

I. The conveyance from Smith to Nevins, March 1, 1838, the subsequent conveyance by Nevins to Elihu Townsend on the same day, and the conveyance by Townsend to Nevins & King, as joint tenants on the same day, and the agreement between King & Nevins, of the one part, and the New York and Erie Railroad Company, of the other part, on the same day, and the subsequent agreement on the next day, between Nevins & King, of the one part, and Smith and all the other parties interested, amounted to an express power in trust, leaving or vesting the legal title in Smith, subject only to the execution of the power. So far as regards this land, the matter is to be treated the same as though the conveyance by Smith to Nevins, for the purposes of partition, the conveyance on the same day by Nevins to Townsend, and from Townsend to Nevins and King, as joint tenants, together with the declaration of the conditional rights of the New York and Erie Railroad Company, and the subsequent declaration of the manner in which Nevins and King should dispose of the property and distribute the proceeds, had all been embodied in one instrument. (Cow. & Hill's Notes, 1421, and cases there cited; *Cornell* v. *Todd*, 2 Denio, 130; *Smith* v. *Ransom*, 21 Wend. 202.) These several instruments refer to each other, and when read together, amount briefly to this: The several tenants in common desire to make partition, and to

accomplish that object, by mutual agreement convey the land to Nevins and King, they covenanting by the same agreement to sell the same and distribute the proceeds among the several tenants in common, in severalty, according to their respective interests. If the several instruments refer to each other, it is not necessary that they be dated the same day. (1 Comst. Rep. 186.) This creates an express power in trust in Nevins and King to sell these lands for the benefit of the respective owners, and distribute the proceeds to each, as therein expressed. By 1 R. S. 728, § 49, it is provided that in every disposition of lands in this manner, no estate or interest shall vest in the trustee; of course the legal title is in the persons for whose use or benefit the conveyance was made. (See § 47 of the same Statute, page 727.) By section fifty-eight of the same statute, page seven hundred and twenty-nine, it is provided "that when an express trust shall be created, for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees, but the trust of directing or authorizing the performance of any act which may lawfully be performed under power, shall be valid as a power in trust." (As to powers in trust, see 1 R. S. 732, § 77; Id. 734, § 94; *Downing* v. *Marshall*, 23 N. Y. R. 366, 377 to 380.) That section applies clearly to this case. These tenants in common had a right to empower Nevins and King to sell this land and distribute the proceeds, and until that sale took place, Smith, or his representative, was vested with a "legal estate in the land, of the same quality and duration, and subject to the same conditions as his beneficial interest." (§ 47; *Rawson* v. *Lampman*, 1 Seld. 456.) This latter case also proves the rule that all these instruments must be read together as one instrument. This being the case, the judgment of October 26, 1838, through which the respondents obtained title, became a valid lien upon all of Smith's interest in the land. The subsequent judgment of May 6, 1839, under which the respondent

redeemed, as judgment creditor, was also a valid lien. Smith's general assignment was not made till January 4th, 1840. The title of the respondent became perfect by sheriff's deed long before the sale by Nevins & King, under the power in trust. The respondents being the owners of the entire interest of Smith, at the time Nevins and King sold the property, (June, 1850,) under the power of sale, became entitled to the ten thirty-eighths of the proceeds, to recover which this action is brought, and the judgment of the court below to that effect, upon the report of the referee, was right. The power in trust being valid, the respondent's title was subject to the execution of the power, by Nevins and King, and hence the respondent became entitled to the ten thirty-eighths of the proceeds of the sale, after the execution of the power. (1 R. S. 729, § 59. See also page 735, § 108.)

II. This is not a trust arising by implication of law under sections 50, 51, 52 and 53 of page 728 of the statute of uses and trusts. The fact that the trust and its object is clearly expressed by taking all the instruments by which it is created, as one entire instrument, negatives the idea of an implied or resulting trust. If it were true, as claimed by the appellant, that an implied trust was created, it could only be a trust in favor of the respondent as creditor, under section 52 on page 728. The debt on which the judgment of October 26, 1838, was recovered, existed as early as the 20th of April, 1835. (See also 2 R. S. 125, § 1, 6 Hill, 438, 440.)

MULLIN, J. In the autumn of 1834, Walter Smith acquired title to certain lands at Dunkirk, in Chautauqua county, for the benefit of himself and others, and in November of that year he conveyed one moiety thereof to Russel H. Nevins. On the same day said last mentioned deed was executed and delivered, an agreement was entered into between Smith and Nevins, wherein and whereby they

agreed, each with the other, to convey one undivided fourth part of said lands to the New York and Erie Railroad Company, upon condition that said company should, within seven years from the 8th day of September, 1834, construct a single track of their road to Dunkirk. But if said company should fail to perform said condition, they would divide said lands amongst themselves. Subsequently, and prior to the 8th day of January, 1838, said Smith conveyed other lands to said Nevins, under like agreements as to the share of said railroad company. Nevins held said lands for the benefit of divers persons who had furnished the moneys to him to pay for the same.

On the 8th day of January, 1838, the several persons interested in said lands held a meeting in the city of New York, and agreed on a plan for dividing said lands amongst all those entitled to portions thereof. In pursuance of the arrangement then made, all the parties interested conveyed their interests in said land to Nevins, and Nevins was to convey to said persons the portions of the said lands to which they were entitled, except that the share of the railroad company was to be conveyed to said Nevins and Charles C. King, in trust to convey the lands set apart to said company on performance by it of the condition aforesaid as to the construction of its road to Dunkirk. In the mean time said trustees were authorized to sell and convey said lands and to deliver to said company the proceeds, after deducting the charges and expenses incident to said sale. But if said company should fail to perform said condition, then said trustees were to divide said lands, or their proceeds, amongst the several persons interested therein, in certain proportions.

To carry into effect this arrangement and division, Nevins conveyed the portion of the lands intended for the railroad company to Elihu Townsend, and Townsend conveyed to Nevins and King, the persons selected as trustees, and the trustees gave back to the railroad company a declaration

of trust, setting forth the terms and conditions on which they held said land, and a like declaration setting forth the terms and conditions on which they were to convey said lands, or divide the proceeds, amongst the parties interested therein. All the conveyances aforesaid were executed and delivered on the 1st of March, 1838, except the declaration of trust in favor of Smith and the others, which is dated the 2d of March, 1838.

It is not found, nor does it appear, that in the deed from Smith to Nevins, or in that from Nevins to Townsend, there is any reference to the arrangement or trust in favor of the railroad company, or of the proprietors, in the event of the company failing to perform the condition.

The Guernsey judgment, under which the interest of Smith was sold, was docketed on the 26th of October, 1838; and the Holmes judgment, under which the plaintiffs redeemed, was docketed on the 6th of May, 1839. Unless the Guernsey judgment became a lien on the interest of Smith in the portion of the lands set apart to the railroad company, the sheriff's sale and the redemption under the Holmes judgment were void, and the plaintiffs are not entitled to recover, whether Stillman is or is not entitled to hold Smith's shares of the railroad lands.

It is not claimed by either side that a valid trust was created by all or any of the conveyances executed by the parties, in relation to the share of the lands intended for the railroad. The trust was undoubtedly void, and the only questions presented for decision in the case are whether the fee in said land remained in Smith, passed to the railroad company or to the trustees, or whether by reason of there being a valid power in trust in Nevins and King, the real interest in the lands was not an equitable interest merely, which passed through the receiver in the Tucker suit to Stillman, leaving the fee nominally only in Smith, which if sold, covered nothing but a mere nominal interest to the purchaser at the sheriff's sale.

Although the trust was void, there was a valid power in trust vested in Nevins & King by the conveyances of the 1st of March, 1838. (3 R. S. 5th ed. 21, § 77.) That section is in these words: "When an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers contained in the third article of this title."

By the seventy-eighth section it is declared that in every case where the trust shall be valid as a power, the lands to which the trust relates, shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust as a power.

Considering the conveyances from Smith to his immediate grantees, and from them to their grantees, and so on from one party to another until the title is finally vested in Nevins & King, as separate and distinct transactions, the only parties to the trust would be Townsend and the trustees. In that case, the trust being void, the title under section seventy-seven above cited would be in Townsend. The several parties through whom the title passed, would in that view of the case have conveyed away their respective estates in the land, and there would have been no legal interest in Smith on the 26th of October, 1838, on which the judgment of Guernsey could be a lien, and the title of the plaintiffs to relief must fail.

The arrangement between the parties interested in the land prior to the 1st of March, 1838, created no trust. Their rights and liabilities rested in covenant, whereby each owner agreed to give a portion of his land to the railroad company. The title did not pass charged with any such obligation, except so far as either party had the right in equity to compel a specific performance.

But it is said that the several conveyances of the 1st of March, 1838, are to be treated as parts of one transaction, and hence that Smith who held the title in fee on that day to a part of the premises in question, is to be deemed and taken to be the person who conveyed in trust to Nevins & King, and it was in him and not in the intermediate parties in whom the title remained; the trust being valid as a power in trust only.

Whatever consequence may follow from treating the several instruments executed on the 1st of March, 1838, as one instrument, the fact still remains that Smith on that day conveyed the fee to Nevins in that part of the lands that was intended for the railroad company, and Nevins by a similar conveyance conveyed the fee to Townsend. Neither took in trust, as in the conveyance to neither was a trust expressed, and no declaration of trust was ever executed by either.

The plaintiff does not ask that a part of the proceeds of the railroad land be awarded to him, because in equity his judgments are liens on the lands or their proceeds; but its claim to relief rests on the legal lien of the Guernsey judgment, and a sale in pursuance thereof. Unless, therefore, there was a legal lien, the plaintiff has no claim to relief at law, as title was out of Smith by a deed in fee, and the fee passed from him to Nevins; and as between them, Smith had no remedy at law or in equity. And it was not until the declaration of trust in behalf of the respective owners took effect that Smith was clothed with any interest whatever in the lands or their proceeds. The interest he then acquired, was an equitable title to enforce the execution of the power and the sale of the lands for an account and distribution of the proceeds.

The judgment of the court below should be reversed, and a new trial ordered, costs to abide the event.

Selden, J. The right of the plaintiff to maintain this judgment, depends primarily upon the question whether

the judgment recovered by Guernsey against Smith, in October, 1838, was a lien upon the lands from which the fund in controversy was derived.

It is clear that the conveyance of the premises in question on the 1st of March, 1838, by Townsend and wife to Nevins & King, taken in connection with the agreements executed by the latter to Smith, Townsend and others, and to the New York and Erie Railroad Company, although invalid as a trust, it not having been made for either of the purposes for which alone express trusts are permitted (see Statute of Uses and Trusts, §§ 45, 55), was nevertheless valid as a power in trust, under section 58 of the same statute. This is conceded by the counsel on both sides. Under this conveyance, therefore, Smith in common with his associates, had a contingent equitable right to his ratable proportion of the proceeds of the lands. It is not claimed that this equity could be seized and sold upon execution. The mode of reaching such an interest is prescribed by the statute. (1 R. S. p. 734, § 93; p. 735, § 103.)

But the counsel for the respondent contends that, aside from this mere equity, Smith had, subsequently to the creation of the power, a legal title to, or interest in the lands, upon which the judgment in favor of Guernsey might attach as a lien; and in support of this position he cites and relies upon sections 47 and 49 of the statute of uses and trusts. (1 R. S. pp. 727, 728.) He also cites section 58 of the same statute, and insists, no doubt justly, that this case falls directly within the latter section. His argument is, that as, under this section, no estate could vest in Nevins and King, the trust to them being valid simply as a power, Smith, as the beneficiary of the power, became, by virtue of section 47 of the statute, vested with a "legal estate in the land." But this is an entire misapprehension of the statute. A very clear exposition of these provisions of the statute concerning trusts, is given by Comstock, J.,

13

in the case of *Downing* v. *Marshall* (23 N. Y. R. 366, 379). Section forty-seven refers exclusively to a class of passive trusts where the *immediate* possession and whole beneficial use of the land is given directly to the *cestui que trust*, the trustee being made by the deed the depositary of a mere naked title, with no active duties to perform in respect to the property. In such cases this section, in connection with section forty-nine, vests the whole estate in the beneficiary. The deed takes effect upon the title, but not according to its terms.

Section fifty-eight, on the other hand, applies to cases where active duties are imposed upon the trustee, and where no rights are given to the beneficiary except through the execution of the trust. In cases of this class, if the trust is not one which is authorized by section fifty-five, no estate whatever passes under the deed, either to the trustee or the *cestui que trust*, but the title remains in the grantor, the grantee becoming, if the duties imposed upon him are such as can be legally and properly executed, the mere trustee of a power. A case might perhaps be supposed, which would belong partly to one and partly to the other of these classes; as where, by the same instrument, the immediate possession and use is given to the beneficiary, while certain powers in relation to the property are at the same time conferred upon the trustee; but this is not such a case. Here no possession or pernancy of the profits is given to the beneficiaries, or either of them, and consequently they can take no title whatever under section forty-seven. The case falls entirely within section fifty-eight of the statute, and by virtue of the next section, viz: section fifty-nine, the estate in all such cases remains in "the persons otherwise entitled, subject to the execution of the trust as a power."

This language excludes the idea that any title *passes* to any one by virtue of the deed. The title does not pass; it "*remains.*" The persons "otherwise entitled," must be

those in whom the title would rest independently of the deed, being of course the grantors themselves. It is clear, therefore, that Smith had no title to the lands in question, under section forty-seven, as the beneficiary of the trust attempted to be created.

There is, however, another view of the case which, although not very distinctly presented, is perhaps hinted at in the brief of the respondent's counsel. It claims that the several deeds from Smith to Nevins, from Nevins to Townsend, from Townsend to Nevins and King, and the counter agreements executed by the latter, being all parts of one and the same transaction, are to be read and construed together as one instrument. Assuming this to be so (as perhaps it is, so far as the papers executed on or about the 1st of March, 1838, are concerned), it might be urged with much apparent force that as the conveyances from Smith to Nevins, and Nevins to Townsend, were merely preliminary to that from Townsend to Nevins and King, and designed solely as a means of conveying from Smith to Nevins and King the powers which were ultimately vested in them, no other or greater effect ought to be given to the two previous deeds than to the final deed from Townsend to Nevins and King. That deed conveyed no title, but simply a power. Why, then, it might be asked, should the prior deeds which, so far as the trust to Nevins and King was concerned, were merely intended to give effect to that deed, be held to have done more?

It would indeed seem that if the whole object of this series of deeds was to create the power vested in Nevins and King, then no title could have passed to any one under them, or either of them; in other words, that the effect would have been the same as if the conveyance had been directly from Smith to Nevins and King, in which case the title to such undivided portion of the lands as was conveyed by Smith on the 1st of March, 1838, would, under section fifty-nine of the statute, have remained in Smith;

and in that case, if it could be fairly maintained that as to the ten thirty-eighth parts belonging to Smith, the fund in controversy should be held to have been derived from that portion of the lands, the plaintiffs would be entitled to the money they have received. There is, however, an insurmountable objection to this conclusion. The reasoning by which it is reached assumes that the *sole* object of the deed from Smith to Nevins on the 1st of March, 1838, was to create the power in Nevins and King, in which the series of conveyances resulted. But such was not the fact. That conveyance was given in part execution of the plan adopted to carry into effect the division and distribution of the lands among all the joint proprietors which had been agreed upon. It was thought proper for that purpose to vest the whole title and interest, both legal and equitable, in Nevins, and the deed from Smith was essential to that object. Unless that deed is held to have taken effect according to its terms, the whole scheme of distribution was a nullity. There was nothing whatever to prevent its taking effect as designed, and hence Smith, by its execution, was completely divested of all legal title to the lands, and as it has been shown that he could derive no such title under the trust, it follows that the judgment of the supreme court was erroneous, and should be reversed.

Hogeboom, J., was absent. All the other judges concurring, judgment affirmed.