In the Matter of the Application of BROOKLYN TRUST COM-
PANY (PRUDENCE BONDS CORPORATION, A. N. CONSTRUCTION
CORPORATION).

Supreme Court, Kings County, December 2, 1936.

*Cullen & Dykman* [*Ralph Crolley* and *Edward Endelman* of counsel], for the Brooklyn Trust Company, petitioner.

*Jacob A. Freedman*, for seven petitioners.

*Pollock & Nemerov* [*Maurice J. Dix* of counsel], for certain certificate holders in opposition to the motion.

*Leon London*, for the Langham Certificate Holders Protective Committee, and for holders in each other issue.

*Delafield, Thorne & Marsh* [*Eugene Blanc, Jr.*, of counsel], for the Prudence Certificate Group and the Hurd Committee.

*O'Malley & Wilson* [*Walter F. O'Malley* of counsel], for the committee of certificate holders.

*Henry Uttal* [*Joseph Friedman* of counsel], appearing specially for elected committee of 230 East Seventy-first Street, New York City.

*Glass & Lynch* [*Leslie Kirsch* of counsel], appearing specially for elected certificate holders committee of 305–311 East Sixty-third street, New York City.

*Rapaport Brothers* [*Robert S. Garson* and *Henry N. Rapaport* of counsel], for the First National Bank of Binghamton, the Security Mutual Life Insurance Company, and various certificate holders.

*George C. Wildermuth* [*Charles M. McCarty* of counsel], for the trustees of the Prudence Bonds Corporation.

*Kaufman, Weitzner & Celler* [*Thomas Cradock Hughes, Isadore Polier, Irving Rozen* and *I. L. Schanger* of counsel], for Stephen Callahan, John M. McGrath and W lliam R. Cowin, trustees of the Prudence Company, Inc., debtors in proceedings under section 77-B of the National Bankruptcy Act.

*Daniel J. Mooney*, for the Lawyers Trust Company, trustee of the Wilray issue.

*Winthrop, Stimson, Putnam & Roberts* [*Alli on Choate* of counsel], for the Empire Trust Company, as depositary.

*Newman & Bisco* [*Frank J. Gillis* of counse ], for the Manufacturers Trust Company, as depositary of the Langham Corporation issue and the Nor-Nor Realty Company issue.

*Sullivan & Cromwell* [*Emmet McCaffery* of counsel], for the Marine Midland Trust Company of New York, as depositary of 1231–1235 Park Avenue, New York City.

*Stanley H. Molleson*, for Annie L. Brown, a certificate holder of the Hotel Wellington issue.

*Frank McCabe, Jr.*, as chairman of the elected bondholders committee of Tigo issue, 10 West Eighty-sixth Street, New York City.

*Theodore Blum*, appearing specially as chairman of the elected committee of the A. N. Construction Company.

*Amy Wren*, representing the Womans Press Club of New York City in the Vinross and Langham issues.

*Archibald Palmer [H. D. Glicksman* of counsel], for certain certificate holders.

BROWER, J. Prudence Bonds Corporation (commonly hereinafter called the " corporation ") was the owner of a senior and prior interest to the extent of $550,000 in a bond and mortgage made by A. N. Construction Corporation covering premises on the northerly side of Sixty-third street, 109 feet east of Second avenue, in the borough of Manhattan, city of New York, by assignment from the Prudence Company, Inc. (commonly hereinafter called the " company "). The company was an affiliate of the corporation, the common stock of both being owned by New York Investors, Inc. The affiliates were interested in bonds and mortgages and in selling mortgage investments to investors. The company made the loan and took the bond and mortgage which was transferred and assigned of record to the corporation; the corporation issued to purchasers thereof a series of first mortgage participating Prudence certificates (commonly referred to herein as " certificates ") against said interest in the bond and mortgage (commonly hereinafter called the " mortgage "), which with the related documents were held by a depositary; the depositary by indorsement on the reverse o˚ the certificate given the investor certified that it held the deposited documents for the benefit of all persons interested in the mortgage. Also by such indorsement the company certified that it had by formal instrument guaranteed the payment of the principal and interest to become due on said certificate and further it certified, and also guaranteed, by such indorsement that the share or part of the mortgage represented by the face of the cert ficate was not subordinate to any other share and was not subject to any prior interest therein. The form of the certificate manifestly was intended to be in compliance with the provis'ons of section 21 of the Personal Property Law and section 111 of the Decedent Estate Law authorizing under certain c rcumstances the investment of trust funds in parts or shares of bonds and mortgages.

On its face the certificate issued by the corporation assigned an undivided share or part in the mortgage aforesaid and stated that it was issued pursuant to a deposit agreement (commonly hereinafter called the " agreement ") dated June 15, 1931, between the corporation and Brooklyn Trust Company, and that by accepting it the holder agreed to all of the conditions and agreements contained in said agreement and to certain further conditions stated in the certificate. Paragraph of the certificate designated therein " I " contained some of these further conditions and reads as follows:

" I. The Corporation and/or The Prudence Company, Inc., hereinafter called the ' Guarantor,' are irrevocably authorized to collect all moneys payable under the terms of said mortgage, credit said bond and mortgage with payments thereon and in its own name to satisfy or assign said mortgage upon payment thereof; account to the holder of this certificate for his share of the principal and for interest at the rate of $5\frac{1}{2}\%$ per annum thereon, payable under the terms of this certificate and to retain any balance of moneys collected; take any action it may deem necessary or proper to protect the mortgage security and in its own name to enforce in part or whole by foreclosure or otherwise, any of the provisions of said bond and mortgage, insurance policies or other instruments relating thereto or to the mortgaged premises."

Contemporaneous with the corporation becoming the owner of said mortgage by assignment from the company, the corporation in writing assigned the mortgage to Brooklyn Trust Company as depositary and also entered into the deposit agreement aforesaid. At the same time also the company executed a formal po icy of guaranty, guaranteeing the payment of the principal and interest of said mortgage to the depositary and to each and every holder of a certificate of participation therein. The guaranty and the agreement (of which the certificate is a part) together constitute parts of one transaction and all hree instruments should be read together and be construed in reference to each other. (*Union Bank* v. *Coster's Executors*, 3 N. Y. 203; *Meriden Britannia Co.* v. *Zingsen*, 48 id. 247; *Knowles* v. *Toone*, 96 id. 534; *Rogers* v. *Kneeland*, 13 Wend. 114.) Out of this transaction emerged the certificate which, when " authenticated," by the certificate of the depositary, was according to the agreement to be delivered to the corporation or its order.

The corporation, having assigned the mortgage to the depositary, was no longer in a position to assign shares or parts therein unless authority to do so was in some manner reserved or conferred upon it. By said agreement (and the form of certificate made part

thereof) the rights and duties of the parties interested in the mortgage as an ordinary mortgage — not necessarily as a guaranteed mortgage — were declared. The deposit agreement recites the desire of the corporation to assign parts or shares in said mortgage, of which it is the owner of the senior interest stated, and to issue certificates evidencing ownership thereof in form substantially as set forth in the form of certificate attached to and made part of said agreement. The dominant purpose of the agreement was to define the rights and duties of the parties to the end that such certificate should secure to the holders thereof an ownership in parts or shares in said mortgage. The agreement then witnesses the understanding, among other things, that the corporation has delivered to the depositary, to be held by it for the benefit of all persons interested, an assignment of the mortgage along with an appraisal showing the value of the real estate covered by said mortgage, to be at least fifty per cent more than the amount of said mortgage, and likewise delivered other documents relating to said mortgage; that the corporation " reserves the right and such right is hereby granted to it by the depositary, to issue certificates substantially in the form set forth in Schedule A attached " to said agreement, each certificate evidencing the ownership of and vesting (when " authenticated " by the depositary) an undivided share or part in said mortgage, each such share or part being owned by the holder without priority of any share or part over any other, whether such holder be the corporation or the depositary or any other person, each share or part being not subordinate to any other share or part, and not subject to any prior interest in said mortgage.

By recital, by reservation and by grant in the introductory and opening clauses of said agreement the purpose is declared of defining the rights and duties of the parties interested in the mortgage and of securing to the holders of said certificates ownership of parts or shares therein. However, subsequent clauses thereof contain provisions inconsistent with the conditions which are earlier therein set forth, namely, the provisions of the certificate containing the paragraph designated " I " above quoted. It is inconsistent with the above-quoted provisions of paragraph " I " of the certificate to provide in said agreement in substance that the depositary shall have the sole right as is provided by article XVII, to take action to protect the mortgage security, enforce any of the provisions of the mortgage by foreclosure or otherwise, to collect and receive the principal and interest and discharge or assign the mortgage on receiving full payment thereof, and to exercise every right, option or privilege in the mortgage contained, but shall not be required to do so except as called for by article XIX

of the agreement, which — likewise inconsistent — provides that the rights of the mortgagee to take action to enforce the terms of the mortgage *may* be exercised by the " Depositary, Corporation and/or the Prudence Company, Inc.," and at the request of the corporation or, if the certificates are in default, of the holders of not less than fifty per cent, principal amount, of the certificates outstanding and unpaid, the depositary *shall* proceed to take action, but only upon receipt of satisfactory indemnity; inconsistent is the further subsequent provision that the depositary may, and does, as is provided by article XXIII, appoint the corporation its agent to collect and receive from the mortgagor " and/or " the owner principal and interest of the mortgage and to disburse the same in accordance with the agreement and the certificates, and may revoke such agency; and that all powers and rights of action under the agreement may be enforced by either the depositary or the corporation at their election without the possession or production of a certificate or interest order or proof of ownership. All of the foregoing articles contain clauses repugnant to the irrevocable authority conferred by the provisions of the aforequoted paragraph " I " of the certificate.

Inconsistent clauses in a contract must be reconciled, if they may be, and effect given to the intent of the parties as gathered from the instrument as a whole. (*Wood* v. *Sheehan*, 68 N. Y. 365, 368; *Schoellkopf* v. *Coatsworth*, 55 App. Div. 331.) The instrument here under consideration is the deposit agreement within which is incorporated the certificate which is attached to and made a part of the agreement. The rule of law is that " when clauses are repugnant, the earlier prevails in deeds and agreements, being contrary to the rule as to the construction ᵒf wills (2 Parsons Cont. [3d ed.] 26 and note); and if the latter provision is to be deemed inconsistent with the former, the latter must therefore be rejected." (*Neudecker* v. *Kohlberg*, 3 Daly, 407; revd. on other grounds, 81 N. Y. 296.) In so far, therefore, as any clauses which follow the reservation in the agreement of the right to issue certificates in the form prescribed are inconsistent with the terms of the certificate, to that extent they must yield to the certificate.

But not alone must the terms of the certificate prevail because they constitute the clauses — made part of the agreement — which are first set forth in the deposit agreement but also because the inconsistent clauses appearing in the later provisions of the agreement are so obscure and indefinite as to the authority designated to exercise the rights and duties expressed therein and under what circumstances and for what specified purposes the authority is to exercise them, that the clauses expressed in the aforesaid para-

graph " I " of the certificate must prevail over and control inconsistent and uncertain clauses in the agreement. The instrument that the certificate holder is apt to read is the certificate itself and that was the instrument the parties interested in the sale of parts or shares in the mortgage intended should emerge from their arrangements, for delivery, when the depositary shall have executed the necessary certificate, to the investor. (*Tautphoeus* v. *H. & S. B. & S. Assn.*, 185 N. Y. 308; *Rothschild* v. *Rio Grande W. R. Co.*, 84 Hun, 103; affd., 164 N. Y. 594.)

The provisions of the Personal Property Law and of the Decedent Estate Law aforesaid, authorizing the issuance of parts or shares in a bond and mortgage, did not require but did authorize a guaranty of payment of principal or interest or both, to accompany such investment. It was here part of the plan, however, to offer investors parts or shares guaranteed both as to principal and interest and the contract of guaranty so guaranteed them. The terms of this contract conferred upon the guarantor authority to take any action it deemed necessary or desirable to enforce any of the provisions of the mortgage and to protect the mortgage security, if the depositary consented thereto, and certain other authority to be exercised either under the control or at the request of the depositary, whose right nevertheless itself to act was not by such other authority restricted. The authority of the guarantor to exercise or not to exercise the functions conferred was, as to the rights of major importance to certificate holders, conditional upon the consent or the request of the depositary. The rights conferred upon the guarantor by a contract of mortgage guaranty have been deemed by the courts to be agency rights, which the owner of the mortgage has the right to terminate upon a default in the performance of the guaranty promises. (*Matter of People* [*Lawyers Title & Guar. Co.*], 265 N. Y. 20; *Matter of People* [*N. Y. Title & Mortgage Co.*], Id. 30.) In *Matter of Westover, Inc.* (82 F. [2d] 177) the court had under consideration a guaranty policy of the company and there held that " although the Prudence Company, Inc., was given certain rights as agent to collect under the mortgage and deal with the mortgaged property, those agency rights were lost when it defaulted on its guaranty." In order that the mortgage may not be left unadministered by an *ipso facto* termination of the agency upon a default, if for no other reason, the foregoing is doubtless to be interpreted to mean that a default makes revocable but does not automatically revoke the agency.

There is an ambiguity in the quoted clause " I " of the certificate in that the corporation " and/or " the company " are " designated as the authority to exercise in " its " name the rights thereby

conferred; authority appears to have been conferred upon the corporation, but the status of the company is ambiguous. The court in *Employers Mutual L. Ins. Co.* v. *Tollefsen* (219 Wis. 434, at p. 437; 263 N. W. 376) took occasion to express its reaction to the meaning of " and/or " in the following language: " It is manifest that we are confronted with the task of first construing ' and/or,' that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of someone too lazy or too dull to express his precise meaning, or too dull to know what he did mean, now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with view to furthering the interest of their clients. We have even observed the ' thing ' in statutes, in the opinions of courts, and in statements in briefs of counsel, some learned and some not."

Light on the interpretation to be given " and/or " may nevertheless be shed by considering the parts that the immediate parties to the several instruments were to fill, as gathered from the entire transaction. The corporation was the owner of the mortgage out of which parts or shares were to be carved by virtue of participation certificates bearing its name as the party to be charged as assignor, and whether it assigned parts or shares as owner of the mortgage or by virtue of a power to do so, it nevertheless remained definitely related to the mortgage. In the agreement it expressly covenanted that the aggregate principal amount of all certificates to be issued and outstanding should not at any time exceed the principal amount of the mortgage, and as assignor thereof it was under an implied warranty to certificate holders that the mortgage assigned was a valid and subsisting security. (*Andrews* v. *Gillespie*, 47 N. Y. 487; *Ross* v. *Terry*, 63 id. 613.) As such assignor, moreover, any estate or interest vested in it which may not have been duly transferred still remained in it. By the general setup, then, the corporation fell into the category with those that were interested in the mortgage as owners, and it was aptly designated to exercise on behalf of the certificate holders the authority embodied in the first above-quoted paragraph " I " of the certificate. The right to issue certificates embodying the authority contained in the form of certificate prescribed, was not alone reserved by the corporation in and by the agreement, but was therein and thereby also granted to the reserver by the depositary, and the latter is accordingly estopped from itself thereafter exercising under said agreement any of the authority so granted. Although the agreement and the contract of guaranty are to be construed together, they are nevertheless to be regarded as separate contracts (*De Ridder* v. *Schermer-*

*horn,* 10 Barb. 638), and the certificate, although contemplating a guaranty, operates, when authenticated, as an assignment of an unguaranteed part or share of the mortgage even should the guaranty fail. The relation of the company to the general setup then was pre-eminently in furtherance of its guaranty. The authorization expressed in paragraph designated " I " on the face of the certificate, read in conjunction with the agreement and the guaranty contract, reflects an intention to confer powers in trust upon the corporation in furtherance of and so as to give effect to the terms of the agreement, and agency powers upon the company in furtherance of and so as to give effect to the contract of guaranty. So long as there was no default under the guaranty the guarantor was authorized to exercise, in furtherance of the guaranty contract, the agency rights expressed in the certificate, and during such period the trust powers conferred upon the corporation by the certificate, interpreted in the light of the agreement and of the guaranty contract, were not intended to be exercised by the corporation. When, however, a default under the guaranty definitely occurred, the trust powers of the corporation became operative and it became bound to assert and to exercise those powers, although the guarantor might still be functioning under its agency powers. Until such revocable agency powers were terminated, the corporation would function under its trust powers and the guarantor under its agency powers. Under such circumstances — and the right to terminate upon a default being inherent in the insured under the guaranty (*Matter of Bond & Mort. Guar. Co.,* 271 N. Y. 452) — any conflict of authority ambiguously conferred should be resolved in favor of the grantee of a trust power acting as trustee for the interests of beneficiaries thereunder rather than of an agent acting in furtherance of its own guaranty containing in large measure reservations for its own benefit. Upon a revocation of the agency powers conferred upon the guarantor, the irrevocable trust powers conferred upon the corporation remain unaffected and undisturbed. Where instruments, simultaneously executed, relating to the same subject-matter are for that reason construed together, the general purpose of the whole, apparent therefrom, will control the strict construction or apparent purpose of one. (*New York Dry Dock Co.* v. *Stillman,* 30 N. Y. 174.)

Prudence Bonds Corporation has filed its petition in the United States District Court for the Eastern District of New York for reorganization under section 77B of the Bankruptcy Act, and it alleged therein that the corporation is unable to meet its debts as they mature; said petition was approved by order dated June 29, 1934, and permanent trustees have been appointed who have

qualified and are in possession of the property and business of the corporation. The Prudence Company, Inc., is in process of reorganization in the same court, likewise under section 77B. An order dated February 1, 1935, found the company unable to meet its debts as they matured and appointed three trustees who have qualified and are in possession of the property and business of the company.

Petitioner is a certificate holder and seeks to have a grantee of a power in trust substituted in place of Prudence Bonds Corporation and on the hearing limited the objects of its application to the mere appointment of such a grantee.

" A power is an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform." (Real Prop. Law, § 131.) A power over real property may be granted " by a suitable clause, contained in an instrument sufficient to pass an estate in the real property, to which the power relates," or by devise in a will. (Real Prop. Law, § 140.) Powers in trust may be either general or special (Real Prop. Law, §§ 137, 138), but in the case of a power in trust an appointee or beneficiary other than the grantee of the power is contemplated. Powers may be created for any lawful purpose, by any language which indicates an intention to bestow them, and to do any act which the grantor might himself lawfully perform. (*Reynolds* v. *Denslow*, 80 Hun, 359.) *Hutton* v. *Benkard* (92 N. Y. 295), moreover, declares that the article of the Real Property Law on powers is applicable to powers over personal property as well as over real, and that the rules for the creation, construction and execution of powers as to real property should be applied, so far as possible, to personal estates.

A power in trust involves a form of express fiduciary obligation similar to that of an express trust, and therein it differs from a mere agency which is revocable at pleasure and which imposes no duty but merely grants an authority to act. Such a power, by its very nature, places upon the grantee thereof a duty, too, to execute it in favor of some other person or persons than himself. (*Stanley* v. *Payne*, 65 Misc. 77.) Such a power involves the idea of a trust as much as a trust estate does, and, in executing such a power, the grantee may act in his own name. (*Cutler* v. *Winberry*, 179 App. Div. 221.)

The authority conferred by the aforequoted clause " I " of the certificate (read in conjunction with the deposit agreement) upon the corporation was in furtherance of the plan to sell parts or shares

in the mortgage, and was created by reservation reserved to the assignor on the assignment of the mortgage of which it was the owner. While such reservation of the right to issue a certificate in the form prescribed had the effect indirectly of conferring the authority expressed in the body of said certificate upon the person or persons therein designated to exercise it, it further manifested a purpose of complying with the conditions of section 131 of the Real Property Law with respect to creating a technical power. Further, the authority, as to the manner of its performance, was not to be subject to the control of any other person, and so differed from the authorization of an agent. (Restatement of the Law of Agency, § 14.) The very division and distribution of the mortgage contemplated by certificates all but made essential the appointment of an authority empowered within prescribed limitations to exercise protective control over the interests of all the scattered certificate holders, not an authority with functions exercisable or revocable at pleasure, but one under the mandatory obligation of a trustee of a technical power in trust. The intent to create a power in trust in the corporation is clearly discernible from the certificate when read in conjunction with the deposit agreement (Cf. *Matter of Brooklyn Trust Co.* [*Prudence Bonds Corp.*], Additional Special Term, N. Y. County, CHURCH, J., 163 Misc. 131; *Matter of New York Title & Mort. Co.*, 150 id. 488), and when by the agreement the corporation expressly reserved to itself the right to issue certificates on their face embodying certain powers in trust in itself, it thereby in effect consented to become trustee of such powers. In *Matter of New York Title & Mort. Co.* (241 App. Div. 351) the court, in the case of a certificate which created a direct obligation of the issuing company secured by a group of mortgages as collateral to the obligation, did not consider that the certificate therein involved created powers in trust. The authority conferred in the instant case, however, relates to a mortgage, parts or shares of which were owned by the certificate holders as tenants in common. (*Matter of Westover, Inc.*, 82 F. [2d] 177; *Matter of New York Title & Mort. Co.*, 160 Misc. 67; *Matter of Bond & Mort. Guar. Co.*, 155 id. 128.) The authority here reserved did not so much create " mere reservations for the benefit of the title company," as the court said in the *Heilbronner* case, but here it was conceived for the benefit and in the interest of the certificate holders, the owners of said mortgage, and said case is not determinative of the applications now before this court.

A trustee of a power may under certain circumstances be removed and another appointed in his place by the Supreme Court pursuant

to the provisions of sections 112 and 182 of the Real Property Law. (*Leggett* v. *Hunter*, 19 N. Y. 445, affg. 25 Barb. 81.) A trustee who is insolvent, or whose insolvency is apprehended, is a trustee subject to removal. Prudence Bonds Corporation, whether it is in fact insolvent or not, is unquestionably in a financial condition where its insolvency is clearly apprehended, and is an unsuitable trustee to execute the trust power. It should, therefore, be removed and a substituted trustee of the power appointed in its place.

The A. N. Construction Company (Nos. 305–311 East Sixty-third street, Manhattan) is one of twelve applications now pending before this court, made by certificate holders in eleven instances and in one by the depositary, seeking in each instance the same relief. Opposing each application are the trustees of Prudence Company, Inc., who have continued in control of, and are now servicing, each mortgage. In some of the applications the depositary appears in opposition, and in all instances committees of different groups of certificate holders, some elected and some self-selected, oppose. Prudence Bonds Corporation does not oppose. One group of certificate holders has taken steps to incorporate into a company to take over and service these mortgages, or some of them. These several groups of certificate holders appear not to be in harmony. Substantially two years have elapsed since Prudence Bonds Corporation and Prudence Company, Inc., filed their petitions under section 77B of the Bankruptcy Act in the Federal court, and of the fifty-four certificate issues of Prudence Bonds Corporation, affecting fifty-four different properties and aggregating over fifty millions of dollars, little has been accomplished with a few exceptions in the way of reorganization of such issues. Many of the factions opposing these applications seem actuated, if not in whole at least in part, by a desire to control or to remain in control of the bonds and mortgages and perform the servicing. Little hope to the certificate holders for successful reorganization of their interests can be looked for under the present situation.

The facts of each of the twelve applications differ in some respects, yet in each of the several issues the same scheme was pursued: Prudence Company, Inc., loaned its money on bond and mortgage, a lien on certain real property; Prudence Company, Inc., then assigned the bond and mortgage to Prudence Bonds Corporation, which then, either by letter of transmittal or by formal assignment, delivered to and deposited with the trust company, called the depositary, the bond and mortgage with instruments of title. The depositary would then authenticate the issue by Prudence Bonds Corporation

of participating certificates in the mortgage, the payment of which was guaranteed by Prudence Company, Inc. Thereafter the certificates so authenticated and guaranteed were sold to the public. The procedure followed and the results accomplished in each issue were substantially the same, and in each the certificates emerging from the transaction contained provisions the same in legal effect as those of the aforesaid paragraph " I " of the certificate in the A. N. Construction Company issue. Although the language employed in the agreements and instruments used in some issues differed in some respects, nevertheless, when the several agreements and instruments in each proceeding are analyzed and interpreted in the light of the principles of law herein considered, the same conclusions are inescapable.

In the proceedings for the reorganization of The Prudence Company, Inc., pending in the Federal court, by order dated February 1, 1935, and by subsequent orders, said court enjoined all persons from in any wise, *inter alia*, interfering with its business and with the property belonging to or in the possession of said company or its trustees. In deference to said court, except to serve upon the guarantor and its trustee due notice of an election to terminate the agency of' the guarantor if a default justifying such revocation has occurred and such an election is made, none of the trust powers conferred shall be exercised hereunder until there shall first have been duly obtained an order or orders of said District Court releasing the certificate issue involved from the injunctive provisions of any order or orders on file in said court.

Matter of Brooklyn Trust Company (Prudence Bonds Corporation, A. N. Construction Corporation, 305–311 East Sixty-third street, Manhattan, New York City).— Motion for appointment of substituted grantee of powers in trust granted. Settle order on notice, providing for appointment of Brooklyn Trust Company as such substituted grantee.