**AMERICAN BLUEFRIESVEEM, Inc., v.
HEIDL et al.**

District Court, S. D. New York.
Nov. 4, 1946.

Abberley, Bryde, Kooiman, MacFall &
Amon, of New York City (P. J. Kooiman,
of New York City, and Frank Marcellino,
of Brooklyn, N. Y., of counsel), for plain-
tiff.

Thomas A. Ryan, of New York City, for
defendants.

COXE, District Judge.

This is a motion by the plaintiff for a
temporary injunction as well as for the
appointment of a receiver for the defendant
corporations.

The action is for a permanent injunction
restraining the defendants from using the
plaintiff's trade name, from transferring or
encumbering the stock of the defendant
corporations, from representing themselves
as owners of or successors to the plaintiff's
former business, and from soliciting the
plaintiff's former customers. It also seeks
an accounting of profits, a declaration of
a constructive trust upon the stock of the
defendant corporations held by the defend-
ant Heidl, and the recovery of damages for
alleged wrongful appropriation of the plain-
tiff's business and good will.

The plaintiff is a Delaware corporation
organized in 1919 as a subsidiary of N. V.
Blaauwhoedenveem-Vriesseveem, a Nether-
lands corporation (hereinafter called
"Dutch parent company"); approximately
90% of its outstanding stock has at all times
been and still is owned by the Dutch parent
company; and from 1919 to May 15, 1940,
it was actively engaged in business in New
York City as international shipping agents,
freight and customs brokers, weighers, and
cargo superintendents.

The Dutch parent company, together
with its predecessors, has for many years

been engaged in the warehousing, weighing and forwarding business in Holland, with its principal establishments at Amsterdam and Rotterdam, and branches in various European cities, the Netherlands East Indies and New York City. The company was formed in 1917 by the merger of two Netherlands corporations whose names, "Blaauwhoedenveem" and "Vriesseveem," identified the business of the two predecessor concerns since 1616 and 1617, respectively. The literal meaning of "Blaauwhoedenveem" is "Blue Hats Warehousemen's Guild" and of "Vriesseveem" "Frisian Warehousemen's Guild." The word "Bluefries," or its variant "Blaufries," has long been associated with the business of the Dutch parent company and its branches, and has been featured in circulars and advertising in different parts of the world.

John J. Gunther-Mohr was the first president and a director of the plaintiff, and remained such until his death in May of 1942; he held at all times prior to his death approximately 10% of the stock of the plaintiff, and this stock has now passed to his widow, Marie A. Gunther-Mohr. The defendant Heidl joined the plaintiff in 1920 in a minor capacity, became assistant treasurer in 1930, a director in 1932, and held the offices of secretary from 1932 and treasurer from 1939. The defendant Conroy became a director of the corporation in 1932; he was also the corporation's legal adviser from its organization. These three men constituted the entire board of directors of the corporation in 1940, when the principal acts now complained of took place, and the defendants Heidl and Conroy remained as directors until their removal on March 14, 1946.

The plaintiff commenced business in 1919 at 44 Whitehall Street, New York City. From 1920 to 1927, it operated with substantial losses, but beginning in 1932 it showed satisfactory profits for successive years. In 1939, the last full year of operation, the net profits, before officers' bonuses and taxes, were $64,000, and a 10% dividend was paid. Much of its business in 1939 and 1940 was the handling and preparation of aircraft for export, and it then had the bulk of that type of business at the Port of New York due to its skill and experience acquired in prior years and its extensive European connections.

A few days after the German invasion of Norway in April, 1940, Gunther-Mohr and the defendants Heidl and Conroy became exercised over the position of the plaintiff in the event that the Germans invaded Holland, and on April 9, 10 and 11, 1940, cables were exchanged between Gunther-Mohr and Fabius, the managing director of the Dutch parent company, in which Gunther-Mohr urged that the Dutch parent company sell to him without restrictions all of the stock of the plaintiff held by the Dutch parent company so as to make the plaintiff "American owned" and in that way forestall any possible complications which might arise from any later invasion of Holland. The Dutch parent company at once expressed itself as unwilling to consider any sale of the stock on the terms proposed, and on April 12, 1940, Gunther-Mohr telephoned Fabius at Amsterdam by transatlantic telephone and again pressed for prompt action on his proposal. The defendant Heidl overheard this entire conversation on a separate wire, and his version of what was said at the time appears in a letter written by him as president of the defendant Bluefries-New York, Inc., to the Dutch parent company under the date of October 5, 1945, reading in part as follows:

"Mr. Gunther-Mohr stated further that he and Mr. Heidl could raise twenty to twenty-five thousand dollars and would pay that amount for the stock and would have the stock transferred so that the company would be 100% American owned; that the company would then go on working in the same manner but would not be bound by any restrictions; that after the war was over there would be an accounting and that he would re-sell the stock to Mr. Fabius, or such person or persons designated by your company, for the same consideration he paid; * * *."

It is not clear from the affidavits whether Gunther-Mohr's offer to purchase the stock was rejected by Fabius in the telephone conversation, but on the same day, namely, April 12th, Fabius wrote Gunther-Mohr stating "We do not see any particular rea-

son for selling our shares in the American Bluefriesveem, Inc., in a hurry to anybody," and advising that instructions had been given to transmit the stock certificates, endorsed in blank, to the National City Bank in New York "for safekeeping and at our exclusive disposal." This letter of April 12th was received by Gunther-Mohr on April 17th, and on the same day the defendant Conroy wrote Fabius again urging that the sale of the stock be made for $20,000 or $25,000 and assuring Fabius of the "loyalty" of the Dutch parent company's "representatives" in New York and "their desire to protect you and your interests."

Without receiving any further advice or instructions from the Dutch parent company, and on April 22, 1940, Gunther-Mohr and the defendant Heidl caused the defendant Bluefries-New York, Inc. to be organized in New York. The stock of this corporation is now held 60% by the defendant Heidl and 40% by the widow of Gunther-Mohr.

On May 10, 1940, the Germans invaded Holland. On May 13th, the plaintiff's board of directors, composed of Gunther-Mohr and the defendants Heidl and Conroy, suspended the plaintiff's business, appointed the newly formed Bluefries-New York, Inc. the plaintiff's sole agent to wind up its outstanding affairs, and placed all of the facilities and equipment of the plaintiff at the disposal of the new corporation. At a later meeting on June 6th, the board authorized the sale of the plaintiff's furniture and equipment to the new corporation for $3,675.

On May 14, 1940, the plaintiff's employees were advised that the plaintiff was no longer in business and that the new corporation would continue in the same way under the new name. Soon afterward, the new corporation assumed the obligations of the plaintiff under the lease of the offices at 44 Whitehall Street, New York City; the cable address of the plaintiff, "Bluefries, New York," was relinquished in favor of the defendant Bluefries-New York, Inc.; and notices were mailed to the plaintiff's customers stating that commencing May 16, 1940, the business "formerly conducted" under the name of the plaintiff "has been and will be conducted in the name of Bluefries-New York, Inc." The new corporation, on taking over the plaintiff's business, used shipping documents identical in form and arrangement with those previously used by the plaintiff and continued the numerical sequence of the plaintiff's documents.

The outstanding business of the plaintiff was liquidated by the new corporation, and after the deduction of substantial service charges by the new corporation, and the payment of salaries to Gunther-Mohr and the defendant Heidl for the balance of 1940, the remaining monies were deposited in a New York bank in a blocked account to the credit of the plaintiff.

The defendant Bluefries-New York, Inc., prospered greatly during the balance of 1940, and in 1941 and 1942, the net profits before taxes during that period being $161,000 in 1940, $578,000 in 1941, $160,000 in 1942. In these three years Gunther-Mohr and the defendant Heidl received total compensation for salaries and bonuses as follows:

| Gunther-Mohr, | $42,000 | in | 1940 |
|---|---|---|---|
| | 84,000 | " | 1941 |
| | 18,000 | " | 1942 |
| the defendant Heidl | 28,000 | " | 1940 |
| | 56,000 | " | 1941 |
| | 54,000 | " | 1942 |

Besides these payments for compensation, the corporation paid dividends of $10,000 in 1940, $60,000 in 1941, and $15,000 in 1942. In 1943 and 1944, the business showed relatively small losses before taxes, but in each of these two years the defendant Heidl was paid a salary of $48,000. Contrasted with this compensation paid to Gunther-Mohr and the defendant Heidl are the payments made by the plaintiff in 1939 to both men for salaries and bonuses, to wit, Gunther-Mohr, $13,200, and the defendant Heidl $11,200.

The business of the defendant Bluefries-New York, Inc. from 1940 through 1944 consisted principally of the preparation and handling of aircraft and tanks for overseas shipment in which a special preservative process called "Bluefriesing" was used with considerable success. During this same

period, two separate corporations were organized to serve as adjuncts to the defendant Bluefries-New York, Inc. in its various operations. The first of these corporations is the defendant Blue Terminal, Inc., which was incorporated in New York in September, 1941; the stock being originally divided equally between Gunther-Mohr and the defendant Heidl, and now held in the same proportions by the defendant Heidl and the widow of Gunther-Mohr. The second corporation is the defendant Blue Express, Inc., which was incorporated in New York in September, 1942, after the death of Gunther-Mohr; all of the stock of this corporation was and is now held by the defendant Bluefries-New York, Inc. Both corporations have at all times had offices with the defendant Bluefries-New York, Inc., at 44 Whitehall Street, New York City.

After the close of the war, Mr. Hendrik J. Onnes, a managing director of the Dutch parent company, came to this country and made an investigation of the affairs of the plaintiff and the acts of its directors and principal officers following the German occupation of Holland in 1940, and it was only then that he learned for the first time of the operations of the defendant Bluefries-New York, Inc. and its two affiliated corporations. Following this investigation, Mr. Onnes demanded that the defendants discontinue their activities and account to the plaintiff for their operations since 1940, and when this demand was refused a meeting of the stockholders of the plaintiff was held on March 14, 1946, at which the defendants Heidl and Conroy were removed as directors of the corporation, and the present suit was later commenced. The plaintiff has recently opened an office at 2 Stone Street, New York City, where it is engaged in reconstructing its business.

The facts detailed above have been taken from the plaintiff's corporate records, from documents and correspondence of unquestioned authenticity, from admissions in the pleadings, and from undisputed facts in the moving affidavits. These facts point unmistakably to the granting of temporary relief to the plaintiff.

■ The directors of a corporation occupy a relation of trust to the corporation, and are bound to promote its interests and protect its property; they are forbidden to exercise their powers for their own personal ends against the interests of the corporation. Bosworth v. Allen, 168 N.Y. 157, 61 N.E. 163, 55 L.R.A. 751, 85 Am.St. Rep. 667; Pink v. Title Guarantee & Trust Co. 274 N.Y. 167, 174, 8 N.E.2d 321; Wardell v. Union Pacific R. Co., 103 U. S. 651, 26 L.Ed. 509. In the present case the facts show that in 1940 the defendants Heidl and Conroy, constituting the entire board of directors of the plaintiff, engineered the transfer of the plaintiff's business, trade name and good will to the defendant Bluefries-New York, Inc., and thereafter operated that corporation solely for the personal benefit of Gunther-Mohr and the defendant Heidl, its only stockholders. These acts of the three men were plainly violations of their duties as directors of the plaintiff; and what their motives were in making the transfer is completely irrelevant in the light of what subsequently transpired and the position now taken by the defendants.

■ On the present showing, the plaintiff is clearly entitled to a temporary injunction restraining the defendants from using the plaintiff's trade name, from representing themselves as the owners of or successors to the plaintiff's former business, and from soliciting the plaintiff's former customers. It is reasonably clear, too, that the plaintiff will ultimately succeed in having a constructive trust impressed upon stock of the defendant corporations held by the defendant Heidl. See Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378; Equity Corp. v. Groves, 294 N.Y. 8, 60 N.E.2d 19. The plaintiff is, therefore, also entitled to a temporary injunction restraining the defendant Heidl from transferring or encumbering the stock of the defendant corporations held by him.

■ The question of the appointment of a receiver is a troublesome one due to the insufficiency of the showing with respect to the financial condition of the defendant corporations, and the payments

made to the defendant Heidl during 1945 and 1946. Undoubtedly, the plaintiff will be entitled to an accounting, and it may well be that a full showing of the operations of the defendant corporations during 1945 and 1946 will require the appointment of a receiver to conserve the assets of the defendant corporations and prevent waste. I do not think though that such an appointment is warranted on the present record. The motion of the plaintiff for the appointment of a receiver of the defendant corporations is accordingly denied at this time, with permission to renew on a further and more complete showing.

The motion of the plaintiff for a temporary injunction and the appointment of a receiver for the defendant corporations is disposed of as above indicated.