**B–M–G INVESTMENT COMPANY and Duncan Boeckman, Trustee,**

v.

**CONTINENTAL/MOSS–GORDIN, INC., Fulton Industries, Inc. and Allied Products Corporation.**

**No. CA 3–2665–C.**

United States District Court, N. D. Texas, Dallas Division.

Dec. 18, 1969.

Golden, Burrow, Potts & Boeckman by George Garrison Potts, Dallas, Tex., for plaintiffs.

Wynne, Jaffe & Tinsley by Morris Jaffe, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This case is before the Court on Plaintiffs' Motion for Summary Judgment.

In 1964 Plaintiff BMG Investment Company entered into a Purchase Agreement with Continental/Moss-Gordin, Inc., pursuant to which BMG sold substantially all its assets to Continental. Among other considerations the Purchase Agreement provided for payment to BMG of the sum of $2,291,334 according to a formula based upon the earnings of Continental during a period from 1964 to expire at the close of Continental's 1976 fiscal year. Continental guaranteed that payments received by BMG pursuant to the formula based on Continental's earnings would aggregate not less than $80,000 a year and would aggregate at least one million dollars by 1976.

Performance of Continental's obligations under the Purchase Agreement was guaranteed by the Defendant, Fulton Industries, Inc., the parent of Continental.

The Purchase Agreement defined certain events of default upon the occurrence of which Plaintiff, BMG, might accelerate and declare due the unpaid balance of the guaranteed portion of the receivable due BMG under the Purchase Agreement. Dissolution of either Continental or Fulton or the adoption by either of them of a Plan of Complete Liquidation was defined as such an event of default.[1]

In February 1968 the Defendant Allied Products, Inc. entered into an agreement with Fulton providing for the purchase by Allied of substantially all the assets of Fulton and the assumption by Allied of substantially all of its liabilities (including its liability under the 1964 Purchase Agreement). On April 26, 1968 the stockholders of Fulton approved the transaction and adopted a

---

[1] "3(n) If any one or more of the following events (herein called "events of default") shall occur after closing and before the Indebtedness evidenced by Paragraph 2

(a) (ii) of this Agreement shall have been paid in full:

(iii) If either Continental or Fulton shall:

a. Be dissolved or adopt a Plan of Complete Liquidation or make any distribution in respect of its capital stock which is in the nature of a liquidating dividend

\*      \*      \*      \*      \*

then and in each and every such event \* \* \* (BMG) may, by notice to Continental and Fulton (which notice shall specify the event of default which shall have occurred) declare immediately due and payable the unpaid portion of the indebtedness evidenced by Section 2(a) (ii) to the extent that payment thereof is guaranteed by Continental \* \* \*"

Plan of Complete Liquidation. Within a few days thereafter Plaintiff BMG gave written notice of its election to accelerate maturity of the guaranteed portion of the indebtedness, specifying, as its reason, the adoption by Fulton of its Plan of Complete Liquidation. The Allied-Fulton transaction was consummated on April 30, 1968. On May 1st the directors of Fulton met and determined to distribute substantially all of the proceeds of the sale of its assets to its stockholders in redemption of its stock.

At the time this suit was instituted on June 5, 1968 there remained unpaid in respect of the receivable created by the 1964 Purchase Agreement a balance of $1,686,305 of which $680,000 was guaranteed and $1,006,305 was contingent on earnings.

Plaintiffs seek acceleration of the guaranteed portion and judgment for that amount for the accelerated balance. The Defendants contend (i) that Fulton's adoption of a Plan of Complete Liquidation and payment of a liquidating dividend did not constitute an act of default within the meaning of the Purchase Agreement, (ii) that Plaintiffs had waived the default or were estopped to assert it, (iii) that the dissolution of Fulton and the assumption of its liabilities by Allied did not injure Plaintiffs but rather enhanced their position by reason of which acceleration should be denied.

The Purchase Agreement provides that its construction shall be governed by the laws of the State of New York. Plaintiffs have pled this provision and asked this court to take judicial notice of the laws of the State of New York which the court has done.

█ Defendants' first point is without merit. It is undisputed that Fulton adopted a Plan of Complete Liquidation and distributed its assets to its stockholders in liquidation. Defendants argue that they should be permitted to offer evidence to show that adoption by Fulton of a Plan of Complete Liquidation was not intended to be a default

under the terms of the Purchase Agreement. This can serve no purpose. The language of the Purchase Agreement defining events of default and the consequences thereof is clear and unambiguous. Where the language of a contract is unambiguous and the words are plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation, for effect must be given to the intent as indicated by the language itself. Brainard v. N. Y. Central, 242 N.Y. 125, 151 N.E. 152, 45 A.L.R. 751; 10 N.Y.Jur. (Contracts) Sec. 191, p. 95. Where the contract is unambiguous evidence of the intention of the parties play no part in the decision of the case. The intention of the parties is found in the language used to express their intention. Plain unambiguous words leave no question of construction except for the court. Western Union v. American Communications Association, 299 N.Y. 177, 86 N.E.2d 162.

█ Defendants base their claim of waiver and estoppel on certain alleged acts and omissions to act on the part of Mr. John T. Gordin. Mr. Gordin, a director of Fulton, attended the meeting of the Board of Directors of Fulton at which the Allied-Fulton transaction was considered. At that meeting Mr. Gordin voted in favor of the Allied-Fulton transaction. He attended the May 1, 1968 meeting of the Fulton directors and voted in favor of distribution of the proceeds of the sale among the stockholders of Fulton. Defendants contend that Mr. Gordin was acting for the Plaintiff, BMG, and that by voting in support of the Allied-Fulton transaction and not uttering a forewarning of the possibility of a declaration of default, Mr. Gordin waived, on behalf of Plaintiff, BMG, its right to insist upon the default and that his conduct estopped BMG from asserting the default.

Prior to 1964 Mr. Gordin was an officer, director and creditor of BMG. The uncontroverted affidavits of Mr. Gordin and Mr. James Greene, an officer of BMG, establish that Mr. Gordin

has never been a stockholder of BMG, and that in 1964 he resigned as officer and director of Plaintiff, BMG, since which time he has not been an officer, director, employee, servant or agent of BMG. He continues to be a creditor of BMG and a portion of the receivable which is the subject of this suit is pledged as security for BMG's indebtedness to Mr. Gordin. It is undisputed that, as such creditor, he is directly interested in the outcome of this litigation.

Aside from their assertion that Mr. Gordin, as a creditor of BMG, is interested in the subject matter of this litigation, that certain of Defendants' officers believed him to be an officer of BMG, and that he engaged in certain discussions concerning the possibility of amendments to the 1964 Purchase Agreement, Defendants do not suggest why any acts or omissions of Mr. Gordin should operate as a waiver of the rights of Plaintiffs or provide the basis of an estoppel to enforce their rights. The facts upon which Defendants rely cannot support a finding of agency of Mr. Gordin and Defendants do not allege any conduct of any officer or agent of BMG in support of their claim of waiver or estoppel.

█ Moreover, the acts and omissions of Mr. Gordin asserted by Defendants are insufficient to give rise to a waiver or estoppel. Mr. Gordin, as a director of Fulton, was obliged to vote in the best interest of the shareholders of Fulton regardless of what his personal interests might be. American Bluefriesveem v. Heidel (S.D.N.Y.) 69 F.Supp. 49; Milam v. Cooper Co., Tex. Civ.App., writ refused 258 S.W.2d 953; Anderson v. O'Briant, Tex.Civ.App., writ refused, n. r. e., 3 S.W.2d 842. Mr. Gordin, in his affidavit, states that he believed and now believes the Allied-Fulton transaction to be in the best interest of the Fulton shareholders. Thus constrained, Mr. Gordin's vote in favor of the transaction cannot operate as a waiver. A waiver is the voluntary and intentional relinquishment or abandonment of a known existing legal right which, except for such waiver, the party would have enjoyed, 21 N.Y.Jur., Waiver, Section 88. Moreover, the intention to waive must clearly appear, In Re Watson's Estate, 177 Misc. 308, 30 N.Y.S. 2d 577. Nor can it provide the basis of an estoppel. No inference can be fairly or reasonably drawn from his vote, bound as he was to vote in the best interests of the Fulton shareholders.

█ Neither waiver nor estoppel can be grounded on silence or inaction unless there exists a duty to speak on the part of a person against whom it is invoked. Allhusen v. Caristo Construction Corp., 5 Misc.2d 749, 166 N.Y.S.2d 109. "Such an estoppel or waiver must be established by the person claiming it by a preponderance of evidence, and neither an estoppel or waiver * * * can be inferred from mere silence or inaction", Gibson Electric Co. v. Liverpool & London & Globe Insurance Co., 159 N.Y. 418, 54 N.E. 23.

The Defendants have not brought forth a fact or proposition of law which might impose a duty on Mr. Gordin to forewarn Fulton of the legal consequences of a contract of which Fulton was guarantor and had full knowledge. Certainly, Mr. Gordin owed no duty to Allied; if anything, he owed Fulton the duty of not interfering with its negotiations with Allied.

█ The facts argued by Defendants do not provide the necessary elements of an estoppel. There can be no estoppel unless something is done or omitted which has the effect of misleading the opposite party or inducing him to act in a different way than he otherwise would. 21 N.Y.Jur. (Estoppel) Sec. 66, p. 99. Only reasonably justified reliance on the act or omission complained of will create an estoppel. Kaui v. County of Kauai, 47 Haw. 271, 386 P. 2d 880, 7 A.L.R.3rd 1385. Defendants have not asserted by pleading, affidavit, or deposition that they were in fact misled by Mr. Gordin's conduct (or, for that matter, that Allied even knew of

his conduct as a director of Fulton); that they relied on his conduct; that they changed their position in any manner relying on such conduct; that the default would not have occurred but for their reliance; or that they have suffered any detriment ensuing from such reliance or change of position.

■ Defendants argue that acceleration should be denied because the dissolution of Fulton and the assumption of its liabilities by Allied which they contend is financially stronger than Fulton did not injure Plaintiffs but rather enhanced their position. In so arguing the Defendants ask this Court to substitute the Court's judgment for the judgment of the Plaintiffs as to the relative financial strength of Allied as against that of Fulton, and to deprive Plaintiffs of an election given them by the clear unambiguous language of the contract to which all parties to the contract willingly consented. In Graf v. Hope Building Corporation, 254 N.Y. 1, 171 N.E. 884; 70 A.L.R. 984, the leading case in New York on this point, the Court, confronted by a similar argument where the default was minor and inadvertent and the mortgagee not adversely affected thereby, reversed a lower court decision enjoining acceleration, saying:

> "Plaintiffs may be ungenerous, but generosity is a voluntary attribute and cannot be enforced even by a chancellor. Forbearance is a quality which under the circumstance of this case is likewise free from coercion. Here there is no penalty, no forfeiture (citing cases), nothing except a covenant fair on its face to which both parties willingly consented. It is neither oppressive nor unconscionable. * * * We are not at liberty to revise while professing to construe. * * * Our guide must be the precedents prevailing since courts of equi-

ty were established in this state. Stability of contract obligations must not be undermined by judicial sympathy". See also First National Stores Inc. v. Yellowstone Shopping Center, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868.

■ The *Graf* case involved a default that was minor, inadvertent and reasonably excusable. The default in this case was deliberate. It cannot be said that the Defendants were unaware of the provisions of a contract to which Continental was a party, of which Fulton was guarantor, and which Allied assumed by contract. While it can be said that equity abhors a forfeiture, it has often been held that acceleration is not a penalty or forfeiture. Graf v. Hope Building Corp., supra; Jacobson v. McClanahan, 43 Wash.2d 751, 264 P.2d 253; Albertina Realty Company v. Rosbro Realty Corporation, 258 N.Y. 472, 180 N.E. 176; Mitchell v. Federal Land Bank of St. Louis, 206 Ark. 253, 174 S.W.2d 671; United Benefit Life Insurance Co. v. Holman, 177 Neb. 682, 130 N.W.2d 593; Jaarda v. Van Ommen, 265 Mich. 673, 252 N.W. 485; Luke v. Patterson, 192 Okl. 631, 139 P.2d 175; Fant v. Thomas, 131 Va. 38, 108 S.E. 847; Federal Land Bank of Omaha v. Wilmarth, 218 Iowa 339, 252 N.W. 507. Moreover, equity will not aid the intentional wrongdoer. United States v. Forness, (2nd Cir.) 125 F.2d 928.

■ Plaintiffs also seek a declaratory judgment construing certain provisions of the 1964 Purchase Agreement relating to the contingent payments to be made following default and acceleration. Section 3(n) of the Purchase Agreement provides that in the event of default and acceleration, Plaintiffs are entitled to be paid the contingent payments in respect of Continental's earnings for the year in which the default occurs and for subsequent years.[2] The

2. "In the event of such declaration (of maturity) no suit or other action taken by (BMG) for the collection of the guaranteed portion of such indebtedness shall prejudice its right to collect payments

that may be or become due and payable under the provisions of Paragraph (a) of this Section 3 (the contingent portion) in respect of the net income after taxes of Continental for the year in which such

defendants contend that no further payments should be made based upon earnings of Continental until payments, calculated cumulatively on the basis of Continental's earnings from inception of the contract, would have aggregated one million dollars (the guaranteed amount). They base their contention on a subsequent provision of the Agreement, Section 3(r).[3] They argue that the Court should place a construction on Section 3(r) that would give rise to a conflict between Section 3(r) and Section 3(n).

■ We find no ambiguity in the provision of Section 3(r). It is apparent that Section 3(r) was intended to express a limitation on payments to be made in the absence of a default and acceleration. The provisions of Section 3(n), quoted in Footnote 2, are clear and unambiguous and govern the rights between the parties following default and acceleration. This Court has no right to nullify the unambiguous provisions of Section 3(n) by placing on another section a construction that will give rise to a conflict between the two provisions. The rule is stated in 10 N.Y.Jur. (Contracts), Section 214, p. 125, wherein it is stated:

> "It is the duty of the court, where there is an apparent repugnancy between two clauses of a contract, to reconcile them, if possible, so as to give effect to all the provisions of the contract. Thus, it is the province of the court to find harmony if possible between apparently conflicting provisions."

See also 17 Am.Jur.2d, Section 267, p. 673; Fox Film Corp. v. Hirschman, 122 Misc. 354, 202 N.Y.S. 854, aff'd, 212 App.Div. 837, 207 N.Y.S. 838; In Re Brooklyn Trust Company, 163 Misc. 117, 295 N.Y.S. 1007; Southland Royalty Co. v. Pan American Petroleum (Tex.Sup. Ct.), 378 S.W.2d 50.

We find no ambiguity in either Section 3(r) or Section 3(n), nor do we find a conflict between them. Plaintiffs are entitled to a declaratory judgment as prayed.

We find no genuine issue as to any material fact except the amount of attorneys' fees which Plaintiffs are entitled to recover pursuant to a provision of the Purchase Agreement providing for the enforcement of any right or covenant provided in the Purchase Agreement.

Plaintiffs introduced the testimony of three leading attorneys of the Dallas Bar. All three were past presidents of the Dallas Bar Association; one is the president elect of the Texas Bar Association. Each of the witnesses testified as to his qualifications and expressed his opinion as to a reasonable attorney's fee for legal services rendered in enforcement of the Purchase Agreement as described in the testimony of a member of the law firm representing Plaintiffs. The opinions of the witnesses ranged from $125,000 to $168,000. We

---

declaration is made and for prior and subsequent years, until the indebtedness evidenced by Sections 2(a) (ii) hereof is paid in full in accordance with this Section 3 or under any other provision of this Agreement. Any amount or amounts that may be collected by (BMG) in respect of the guaranteed portion of such indebtedness in consequence of such declaration of maturity * * * shall not apply or be a credit against Continental's obligation to pay the sums provided in paragraph (a) hereof in respect of its net income after taxes for the year in which such declaration is made and for subsequent years."

3. "(r) Anything contained herein to the contrary notwithstanding, the amount payable under this Section 3 to BMG on any given March 15th, shall not exceed an amount which when added to all sums theretofore paid BMG under paragraphs (a), (f) (ii) and (h) of this Section 3 will equal the greater of (x) the payments required to be made pursuant to subparagraphs (i) and (ii) of Section 3(i) hereof or (y) the aggregate amount payable to BMG pursuant to said paragraphs (a), (f) (ii) and (h) in respect of all fiscal years expired prior to any such March 15th."

find $125,000 to be a reasonable attorney's fee.

Summary Judgment in favor of the Plaintiffs and judgment for $125,000 attorneys' fees may be entered in accordance herewith.

So ordered.